Harry GOSIER, Petitioner–Appellant,

v.

George WELBORN, Warden, Menard Correctional Center, Respondent–Appellee.

No. 98–2806.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1999.

Decided April 15, 1999.

---

Stephen E. Eberhardt, Chicago, IL, Robert H. Farley, Jr. (argued), Naperville, IL, for Petitioner–Appellant.

Domenica Osterberger (argued), Office of Attorney General, Chicago, IL, for Respondent–Appellee.

Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

After breaking into the home where his estranged wife Lesia was living with her parents and her sister Soynda, Harry Go-

sier slew Soynda, had sexual relations with her corpse, and lay in wait for Lesia. On arriving she was raped in the presence of their 3½-year-old daughter India, then bound and gagged until Lesia's mother Mae Halcrombe came home. India begged Gosier not to kill her grandmother, but he shot Mae three times in the head, making sure that both Lesia and India knew what was happening. Gosier was charged with two murders and two aggravated sexual assaults. One day into his trial Gosier pleaded guilty. A judge concluded that he was eligible for the death penalty, and a jury (the same panel that heard the partial trial) specified capital punishment for his crimes. ' The conviction and sentence were affirmed on direct review, *People v. Gosier*, 145 Ill.2d 127, 163 Ill.Dec. 823, 582 N.E.2d 89 (1991), and a collateral attack in state court was unsuccessful, 165 Ill.2d 16, 208 Ill.Dec. 308, 649 N.E.2d 364 (1995).

Gosier began his federal collateral attack after April 24, 1996, so the current version of 28 U.S.C. § 2254 applies. He sought appointment of counsel before that date but did not file a petition until afterward, and it is the latter event that determines whether the Antiterrorism and Effective Death Penalty Act governs. *Holman v. Gilmore*, 126 F.3d 876 (7th Cir.1997). One court has disagreed with *Holman*, concluding that *Hohn v. United States*, 524 U.S. 236, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998), requires an application for counsel to be treated as a "case pending" before the AEDPA's enactment. *Calderon v. United States District Court*, 163 F.3d 530, 539–40 (9th Cir.1998) (en banc). Like Judge Hall, dissenting in *Calderon*, 163 F.3d at 544–45, we find this use of *Hohn* inapt. The question in *Hohn* was whether an application for a certificate of appealability is a "case" in the court of appeals, and therefore amenable to review on writ of certiorari under 28 U.S.C. § 1254. The answer to that question does not bear on the issue in *Holman* and *Calderon*: whether an appli-

cation for counsel under 21 U.S.C. § 848(q)(4) is a "case pending" under Chapter 153 of the Judicial Code—the critical question for application of the AEDPA. See *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). We did not doubt in *Holman* that a request for counsel is a "case" in the sense that it is subject to appellate review (and, if need be, review by the Supreme Court). Indeed, Gosier's request for counsel *was* reviewed by this court on appeal, after the district judge dismissed his application. *Gosier v. Welborn*, 1996 WL 30798, 1996 U.S.APP. LEXIS 2051 (7th Cir. Jan. 24, 1996). But a request for counsel under § 848(q)(4), part of Title 21, is not a case *under Chapter 153 of Title 28*—that is, the request is not a collateral attack on a criminal judgment. Cf. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (a request for counsel does not initiate a civil suit for purposes of statutes of limitations). This rationale of *Holman* was ignored by the ninth circuit, and we are not persuaded by a decision that avoided the fundamental issue. So we apply the AEDPA to Gosier's case.

On the basis of the state record, the federal district court rejected all but one of Gosier's contentions. 1997 WL 452406, 1997 U.S. Dist. LEXIS 11545 (N.D.Ill.1997). The remaining assertion—that Gosier was unable to assist in his defense—was the subject of an evidentiary hearing. After receiving testimony from the state trial judge, two psychiatrists, three lawyers who had represented Gosier in state court, three law enforcement officers who related Gosier's activities and mental state in prison near the time of his plea, and a lawyer who had known Gosier during high school and college, the district judge concluded that Gosier had "a reasonable degree of rational understanding [and] a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396–98, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). See also *Drope v.*

*Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). This meant that he was competent to stand trial and thus, because *Godinez* holds that the competence-to-stand-trial standard also applies to guilty pleas and waivers of counsel, Gosier could dismiss his lawyers and plead guilty. The district court accordingly denied his petition for a writ of habeas corpus. 1998 WL 341825, 1998 U.S. Dist. Lexis 9456 (N.D.Ill.1998).

■ Illinois contends that forfeiture in state court forecloses Gosier's argument that he was not competent to stand trial, represent himself, and plead guilty. That is indeed what the Supreme Court of Illinois held: "Defendant vigorously attacked several trial court determinations relating to his guilty plea on his direct appeal to this court. He offers no explanation for his failure to raise his present allegation regarding the guilty plea. Therefore, since defendant could have raised this issue on direct appeal, but failed to do so, the issue is waived." 649 N.E.2d at 367. Yet both before and after Gosier's case the Supreme Court of Illinois flatly stated that claims of incompetence to stand trial need not be raised on direct appeal. See *People v. McLain*, 37 Ill.2d 173, 177, 226 N.E.2d 21, 24 (1967); *People v. Nitz*, 173 Ill.2d 151, 161, 218 Ill.Dec. 950, 670 N.E.2d 672, 676 (1996). The wavering course of state law led the district judge to conclude that the state's forfeiture ground is inadequate to foreclose federal review. 1997 WL 452406 at *6–8, 1997 U.S. Dist. Lexis 11545 at *17–25. These cases do not announce a firm rule with a possibility that the court will excuse the forfeiture in the interest of justice. See *Prihoda v. McCaughtry*, 910 F.2d 1379, 1384 (7th Cir.1990). Instead, there appear to be incompatible lines of authority, cases that do not cite each other, let alone establish a rule-and-exception framework. The Attorney General of Illinois tells us that the cases may be harmonized on the ground that prisoners who on

collateral attack offer additional evidence of mental shortcomings are allowed to pursue their claims, while prisoners who stand on the original record are not. Perhaps this is a factual difference, but it is not a ground emphasized (or even mentioned) by the Supreme Court of Illinois, which said in *People v. Burson*, 11 Ill.2d 360, 370, 143 N.E.2d 239, 245 (1957), that "grace" rather than more evidence explains its pattern of decisions. *Nitz* states, without qualification, that claims of this kind *always* may be raised on collateral attack in Illinois. A defendant reading the state court's opinions would not think it necessary to raise this issue on direct appeal, and the forfeiture doctrine therefore does not bar collateral review in federal court. *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir.1997).

After concluding that the state court should have held a hearing to inquire into Gosier's competence, the district judge held one of his own and concluded, as we have recounted, that Gosier was able to understand the proceedings and assist in his defense. If this is correct, it follows that the plea comports with the Constitution. Gosier advances a nominally distinct argument that his plea was involuntary, but this is derivative from the competence argument. To the extent it has an independent basis, the Supreme Court of Illinois cogently addressed it on direct appeal, 582 N.E.2d at 96–99, and that decision cannot be called an "unreasonable" application of settled law. See 28 U.S.C. § 2254(d)(1). We therefore put voluntariness aside.

■ The evidence before the district court strongly supports the conclusion that Gosier was competent—so strongly, indeed, that it is clear that the hearing was unnecessary. Only when the facts *at the time of trial* create a *bona fide* doubt about an accused's fitness is a hearing required. *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Drope*, 420 U.S. at 173. That standard has not been met—and not only because Jus-

tice Robert Steigmann, the trial judge, testified that Gosier comprehended the proceedings:

> He responded to the questions I asked. He asked questions himself. When I answered, he responded to those questions in a coherent fashion.... His answers were responsive to my questions. In response to the admonitions I was giving him ... He appeared to me to understand those admonitions and to make responses pertaining to them that were consistent with the admonitions I had given for I think in the few instances clarification of what that would mean and the like.

The judge also related that Gosier's lawyer did not indicate that he had any trouble communicating with his client, or that Gosier was unable to comprehend the proceedings or assist in the defense. According to Justice Steigmann, only "the terrible judgment that Mr. Gosier's request to represent himself showed" raised any flag—and of course this request, the exercise of a constitutional right, see *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), can't be used to prevent the defendant from representing himself or pleading guilty, lest rights be self-canceling. Gosier has a college education; Justice Steigmann thought that he did the sorts of things an attorney would have done, and that his judgment was "terrible" only because no lay person could do as well as a lawyer in a capital case. Yet as the Court held in *Faretta* the state judge was in the end required to accept Gosier's decisions even though they reflected poor judgment (as *Faretta* characterized *every* decision to waive the aid of counsel).

Gosier's current lawyers stress the events of October 18, 1988, the second day of the trial, when he pleaded guilty. As the prosecutor prepared to call Lesia to the stand, Gosier was " 'emotionally upset seated at counsel table, visibly and audibly crying.' " 582 N.E.2d at 93. After a recess, Lesia also became upset and was unable to compose herself. Gosier then informed one of the deputies that he wished to plead guilty to all the charges and told the judge: "Your Honor, can't none of us undo the past. And I still love my family and I'm guilty Your Honor. I'm guilty." *Id.* at 93–94. Gosier's current lawyers also point to the statement he made when he dismissed his trial counsel Joseph Hooker in order to represent himself:

> It is totally based on, just it is based on me, on what I feel, and what I think is best for me at this hour at this present time. As far as the doctors ... are concerned I don't think that I need their reports or anything, considering the nature of my case. I don't know how many of you in here believe in God, but I know that there is some things that happened in the past in our lives. We all have pains and, you know, sorrows, and I know that I have turned my life and converted myself over to God, and this is a matter beyond my control or my attorney control or even your control, and I just think it's interesting that I go, you know, with my faith with God, and in my heart, and I know that regardless of the outcome of this case, that it will be best if his office didn't represent me, and at the same time to indicate that Mr. Hooker was doing an outstanding job.

Gosier's reference to "the doctors" is to two psychiatrists, Lawrence Jeckel and Emanuel Tanay, who had examined him before trial in order to evaluate the possibility of an insanity defense in light of the gruesome nature of his crimes and a suggestion of current mental problems. A report by the Champaign County Mental Health Center from August 1988 asserts that "Harry's defenses may well be deteriorating to some extent ... and concerns of stability and control are emerging." The record does not reveal the author's medical credentials. But we do know that Jeckel examined Gosier twice in September 1988 and concluded that he was sane at the time of the offense and appreciated the crimi-

nality of his conduct, that he understood the charges, and that he could cooperate with his lawyers. Tanay likewise concluded that an insanity defense would be untenable, though he thought that Gosier was under the influence of cocaine and suffered from a severe emotional disturbance at the time of the crime. The latest and best evidence available to Justice Steigmann supported a conclusion that Gosier was competent to stand trial, represent himself, and plead guilty.

Neither the statements Gosier made in court nor the diagnoses of the two psychiatrists would have suggested to a reasonable judge in October 1988 that Gosier was unable to understand the charges or assist in his defense. Gosier committed a terrible crime but later had a religious conversion and showed remorse, wanting to spare his wife the ordeal of describing in court what had transpired. His current lawyers describe this as a death wish demonstrating irrationality, but (belated) compassion toward the victim of one's crimes is not irrational, and at all events Gosier vigorously contested the sentencing portion of the prosecution, even calling Dr. Tanay to testify to his drug problem and emotional disturbance. We may assume with Dr. Tanay that Gosier suffers from a mental impairment—normal people do not commit multiple murders or necrophilia—but "[f]itness for trial is a much narrower concept than moral or social wellness." *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir.1996). See also, e.g., *Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir.1984). Like the district judge, we recognize that in prison Gosier occasionally seemed to be unstable and was put on the suicide watch list; but the legal question is whether Justice Steigmann should have perceived that Gosier did not understand the charges and could not assist in his defense. Both Jeckel and Tanay diagnosed Gosier as suffering from rage and paranoia. Like many others with that mental status, Gosier displayed different levels of skill and understanding at different times. He was a star athlete in high school, captain of the foot-

ball team and president of student government, and a notable collegiate player. He became a substitute high school teacher after his hopes for a pro football career were dashed. Persons afflicted by paranoia often are intelligent and skillful. In court, and in his 1988 interviews with Drs. Jeckel and Tanay, Gosier demonstrated sufficient command of himself and enough ability to comprehend the charges and proceedings that a hearing was unnecessary. The district judge should have denied the petition without holding an evidentiary hearing. But we add, for completeness, that the district judge's conclusions following the hearing are not clearly erroneous, and they independently require the denial of collateral relief.

Three remaining issues require only brief discussion.

■ 1. The prosecutor predictably used the state's peremptory challenges to remove from the jury persons who seemed to be queasy about capital punishment. Gosier contends that this violated the Constitution by enhancing the prosecutor's prospects. Of course, Gosier had the same 14 peremptory challenges as the prosecutor did and used them in the same way as the prosecutor—to remove members of the venire who seemed most likely to favor the other side's position. But Gosier insists that the result was not a wash, because more citizens of Illinois support capital punishment than oppose it; an equal number of challenges thus made it more likely that the prosecutor could remove from the jury all persons with moral scruples about the death penalty than that Gosier could remove all persons who thought capital punishment a murderer's just desert.

The district judge aptly observed that this is "a fundamental attack on the notion of the peremptory challenge itself." 1997 WL 452406 at *27, 1997 U.S. Dist. Lexis 11545 at *79. As long as peremptory challenges exist, one side or another may gain an advantage in a particular case. In *Hol-*

*man* we rejected, as barred by the AEDPA and *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), a variation of Gosier's position. Holman contended that the judge and prosecutor should not be allowed to ask questions of the venire, if the answers can be used to exercise peremptory challenges against persons who would hesitate to impose the death penalty. We replied: "No such principle has been adopted to date by the Supreme Court, so § 2254(d)(1) precludes its recognition for the first time on collateral review." 126 F.3d at 885. Gosier decided to attack the peremptory challenges directly rather than the acquisition of information that would facilitate the challenges, but the response is the same. The Supreme Court has never questioned the propriety, under the Constitution, of using peremptory challenges to remove from the jury persons likely to support the defendant's position. Gosier therefore cannot satisfy the statutory standard for relief: a demonstration that the state court's resolution "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. § 2254(d)(1).

Gosier insists that *Teague, Holman,* and § 2254(d)(1) are irrelevant because the prosecutor's use of peremptory challenges to remove potential jurors perceived as sympathetic to the defense is a "structural defect in the trial mechanism." This confuses substantive rules of conduct with a method used to determine whether an error was harmless. Some "structural errors" may never be deemed harmless. Compare *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), and *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), with *Sullivan v. Louisiana,* 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Whether errors that affect the number and use of peremptory challenges are in this "structural" category is an issue that has divided the courts of appeals. See *United States v. Underwood,*

130 F.3d 1225 (7th Cir.1997) (opinion dissenting from the denial of rehearing en banc) (collecting authority). But we do not have to decide whether an error of constitutional dimension was harmless. The question, rather, is whether an error occurred in the first place, and § 2254(d)(1) means that only rules articulated by the Supreme Court of the United States *before* the state court rendered its decision may be applied on collateral review. Section 2254(d)(1) differs from *Teague* because the new statute closes the escape hatches in *Teague*; at all events, we do not think it likely that the Supreme Court will declare that the elimination of all strategic uses of peremptory challenges is a foundational principle on a par with the right to counsel. If this right is to be established at all, then, it must be established on direct review. But the Supreme Court denied Gosier's petition for certiorari from the decision affirming his conviction and sentence, see *Gosier v. Illinois,* 504 U.S. 987, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992), and at that point the door closed to the recognition of new legal theories.

■ 2. Interviewed after the trial, one juror told an investigator that he voted for the death penalty after concluding that he could not persuade any other juror to vote for lenience. According to the investigator, this juror would have adhered to his position had he recognized that a single dissenter can block capital punishment. Gosier does not attack the jury instructions and does not identify how a juror's forgetfulness about correct instructions could violate "clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. § 2254(d)(1). The district judge did not get even this far, however, holding the claim forfeited because it was never presented to the Supreme Court of Illinois. Gosier blames the lawyer representing him on collateral attack for omitting this issue, but "[t]he ineffectiveness or incompetence of counsel during Federal or State collat-

eral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). This means, in particular, that counsel's errors in post-conviction proceedings cannot supply the "cause" that would relieve a defendant of his forfeitures. *Coleman v. Thompson*, 501 U.S. 722, 752–54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

And that's not the only procedural problem Gosier faces. Even if he had preserved this issue in state court, he could not pursue it in federal court given Fed. R.Evid. 606(b), which excludes evidence concerning "any matter or statement occurring during the course of the jury's deliberations or ... the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith". There are two exceptions, but Gosier does not say that any outside influence or extraneous prejudicial information affected the jury. Although the usual application of Rule 606(b) is to protect verdicts in federal trials, neither the language nor the history of the rule suggests that it is limited to this function. It applies equally when the verdict was rendered in state court. Rule 606(b) codifies a common law rule disallowing inquiry into a jury's (or juror's) reasoning. See Charles Alan Wright & Victor James Gold, 27 *Federal Practice and Procedure* §§ 6072, 6074 (1990). Every state has a parallel rule. It would be altogether inappropriate for a federal court to entertain the kind of evidence Gosier proffers just because this is a collateral attack, when neither a federal nor a state court allows a verdict to be challenged directly using evidence of this kind. His current effort to reconstruct the jury's deliberations is simply forbidden.

3. Finally, Gosier contends that Illinois' capital sentencing statute is unconstitutional because it does not clearly assign the burden of persuasion to either side. Counsel should recognize that there is no point in dredging up a tired contention repeatedly rejected by this court. See *Del Vecchio v. Illinois Department of Corrections*, 31 F.3d 1363, 1388–89 (7th Cir.1994) (en banc); *Holman*, 126 F.3d at 885; *Free v. Peters*, 12 F.3d 700, 703–04 (7th Cir. 1993); *Williams v. Chrans*, 945 F.2d 926, 936 (7th Cir.1991); *Silagy v. Peters*, 905 F.2d 986, 997–1000 (7th Cir.1990). Given § 2254(d)(1), even if we should be persuaded that all of these cases are wrong (which we aren't), Gosier could not benefit: the new rule could not be applied retroactively on collateral review.

AFFIRMED.