In the

# United States Court of Appeals

### For the Seventh Circuit

No. 02-3633

WILLIAM P. ELLZEY,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-2124 (97-20034)—**Michael P. McCuskey**, *Judge.*

SUBMITTED JANUARY 31, 2003—DECIDED MARCH 31, 2003

Before EASTERBROOK, EVANS, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* To appeal from the rejection of his collateral attack under 28 U.S.C. §2255, William Ellzey needs a certificate of appealability. One potential problem is timeliness: we affirmed his conviction on May 10, 1999, in an unpublished order, and the petition Ellzey filed on May 8, 2000, was a placeholder. It asserts that his lawyer furnished ineffective assistance at sentencing but supplies neither factual detail nor legal elaboration. In the place provided for supporting facts and argument, Ellzey wrote: "will be amended within thirty (30) days." Ellzey filed this skeletal document to satisfy the period of limitations, with the plan of filing a real petition later—

as he did on May 30, 2000. The prosecutor moved to dismiss, but the district judge held that Ellzey's original document met the statutory time limit (see §2255 ¶6) and could be amended afterward not only with details about the sixth amendment theory but also to add new lines of argument, such as a challenge based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which was not decided until June 2000. Later the district judge denied the petition on the merits. See 210 F. Supp. 2d 1046 (C.D. Ill. 2002). Before considering whether Ellzey is entitled to a certificate of appealability, see 28 U.S.C. §2253(c), we must decide which, if any, of his legal theories is timely.

One line from the motion to dismiss sums up the prosecutor's position: "Unfortunately for [Ellzey], there is no provision under 28 U.S.C. §2255 for the filing of a 'Notice of Intent to File 2255 Petition'". That's right. Cases such as *Holman v. Gilmore*, 126 F.3d 876, 879-80 (7th Cir. 1997), and *Gosier v. Welborn*, 175 F.3d 504, 506 (7th Cir. 1999), hold that only documents attacking the conviction on the merits count as collateral attacks. Others—whether motions for the appointment of counsel or requests to save a place in line—do not suffice. The ninth circuit handled this differently. See *Calderon v. United States District Court*, 163 F.3d 530 (9th Cir. 1998) (en banc). The technical question in *Holman*, *Gosier*, and *Calderon* was whether an application for appointment of counsel should be treated as a collateral attack for purposes of the rule that proceedings commenced before April 24, 1996, are not affected by amendments to §2254(d) made on that date. But separating a collateral attack from other motions matters to timeliness under the Antiterrorism and Effective Death Penalty Act as well as to the question whether the AEDPA governs. The Supreme Court now has sided with *Holman* and *Gosier*, disapproving the resolution of *Calderon*. See *Woodford v. Garceau*, No. 01-1862 (U.S. Mar. 25, 2003). A "notice of intent to file" or its equivalent therefore is not a collateral attack.

Must a document containing neither facts nor reasons be treated the same as a "notice of intent to file"? The prosecutor assumes that the answer is yes but does not explain why. We have held that any paper asking for the relief provided by §2255 ¶1 *is* a motion under §2255, without regard to its caption or other details. See, e.g., *United States v. Evans*, 224 F.3d 670 (7th Cir. 2000); *Romandine v. United States*, 206 F.3d 731 (7th Cir. 2000). These decisions represent the flip side of *Holman* and *Gosier*, and their approach too thus gains support from *Woodford*. Ellzey's filing was short on facts and argument, but it did assert ineffective assistance of counsel at sentencing, a ground within §2255 ¶1. It asked for *relief*, not just for more time to file a petition (or for a lawyer to assist in preparing a petition, the subject of *Woodford*).

True enough, Ellzey's original filing did not comply with Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts:

> The motion . . . shall specify all the grounds for relief which are available to the movant and of which he has or, by the exercise of reasonable diligence, should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified. It shall also state the relief requested.

Rule 2(b) departs from Fed. R. Civ. P. 8 by requiring fact pleading. Because Ellzey's filing did not comply with Rule 2(b), it could have been returned by the district court under Rule 2(d): "If a motion received by the clerk of a district court does not substantially comply with the requirements of rule 2 or rule 3, it may be returned to the movant, if a judge of the court so directs, together with a statement of the reason for its return." A document returned under Rule 2(d) would not satisfy the period of limitations. Returned documents don't count as petitions,

which usually is good for prisoners because it means that a new document that satisfies Rule 2(b) is not a second or successive petition. See *Benton v. Washington*, 106 F.3d 162 (7th Cir. 1996). But by using the word "may" Rule 2(d) gives district judges an option, not a duty. Ellzey's document was *not* returned. It stayed on the docket and was amended. *As* amended, it satisfies Rule 2(b). An amended petition is not treated as a new one; otherwise every amendment would be a forbidden "second or successive" petition, a position we have rejected. See *Johnson v. United States*, 196 F.3d 802 (7th Cir. 1999). So the time requirement of §2255 ¶6 has been met. Still, a prisoner should think twice before emulating Ellzey: if the district judge returns the document under Rule 2(d), time may run out before the prisoner can get a proper petition on file.

As it happens, Ellzey's maneuver was unnecessary. Ellzey, the prosecutor, and the district judge all thought that, because Ellzey did not seek certiorari following the affirmance of his conviction, he had exactly one year from the date of our decision to commence collateral proceedings. That is not correct. A prisoner has one year from "the date on which the judgment of conviction becomes final". 28 U.S.C. §2255 ¶6(1). We concluded in *Gendron v. United States*, 154 F.3d 672 (7th Cir. 1998), that this means one year from the date the appellate mandate issues. In *Clay v. United States*, 123 S. Ct. 1072 (2003), the Supreme Court held that finality occurs when the time to seek certiorari expires (69 days after the mandate, for a litigant who did not seek rehearing or an extension of time). Even if the amendment of May 30 were treated as the "real" collateral attack, that is timely under *Gendron* (our mandate issued on June 1, 1999) and thus necessarily is timely under *Clay* too (the time to seek certiorari expired on August 8, 1999).

Still, this does not resolve the question whether all of Ellzey's legal theories are properly presented. The filing on

May 8 said that counsel's performance with respect to sentencing was subpar; by May 30 the list of grievances had expanded to the sufficiency of the indictment and the wisdom of going to trial (both of which Ellzey wanted to get at by complaining that his lawyer did not make the right arguments and did not do more to induce him to strike a plea bargain); by the time the district court denied the petition, further amendments had elaborated on these themes and added arguments based on *Apprendi*. Although the district judge did not discuss the propriety of these extensions, several courts of appeals have concluded that a petition may not be amended, more than a year after the conviction has been final, to add legal theories unrelated to those placed at issue before the period of limitations expired. See *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002); *United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000); *United States v. Pittman*, 209 F.3d 314 (4th Cir. 2000). If these decisions are right, then the *Apprendi*-based arguments, at least, came too late.

Amendments to the pleadings are not covered by the collateral-attack rules. Rule 12 of the collateral-attack rules thus sends us to the Rules of Civil Procedure for the closest match—to be precise, Fed. R. Civ. P. 15(c), which speaks directly to the question whether an amendment to the complaint relates back for the purpose of the period of limitations. See *Rodriguez v. United States*, 286 F.3d 972, 981 (7th Cir. 2002). Elements of civil practice sometimes must be modified to match special features of collateral-attack practice, but statutes of limitations are ubiquitous in ordinary civil litigation over torts and contracts. Nothing in the nature of the limitations rules enacted as part of the AEDPA requires courts to depart from the way Rule 15(c) handles relation back for other periods of limitations.

Rule 15(c) tells us that an amendment to the pleadings relates back, for limitations purposes, when:

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Subsections (1) and (3) are inapplicable, but subsection (2) speaks to the issue. A new theory in a collateral attack relates back when it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading". See Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6A *Federal Practice & Procedure* §1497 (2d ed. 1990).

Courts that have declined to allow new theories to be added by amendment effectively read "conduct, transaction, or occurrence" to refer to single events in a criminal proceeding—an objection to particular evidence, each aspect of a calculation under the Sentencing Guidelines, and so on. Each step of the trial, and each legal argument, becomes a separate transaction or occurrence. Yet this is not how the phrase "conduct, transaction, or occurrence" is used in civil practice. That phrase sums up the "same

transaction" approach to the law of preclusion (and thus to compulsory joinder): all legal issues and claims for relief arising out of a single transaction may (and often must) be raised together, and Rule 15(c) specifies that anything that would be barred, if not brought now, may be added and litigated. Cf. *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223 (7th Cir. 1993). We observed in *Brannigan v. United States*, 249 F.3d 584, 587 (7th Cir. 2001), that some statutes governing collateral attacks use the word "claim" in a way that departs from its usage in the law of preclusion (res judicata), so that civil norms cannot be transferred wholesale. Even so, we concluded in *Brannigan*, all avenues of challenging a single sentence are one "claim" for purposes of the AEDPA—that facts rather than legal arguments define the "claim". This meant in *Brannigan* that the prisoner lost, because having trotted out one legal theory to attack his sentence, he could not try another given 28 U.S.C. §2244(b)(1): "A claim presented in a second or successive habeas corpus application . . . that was presented in a prior application shall be dismissed."

Here a broad definition of "claim" would help the prisoner by permitting ready amendment. But Rule 15(c) does not refer to a "claim"; it uses the broader phrase "conduct, transaction, or occurrence"—which is to say, the events under analysis, *not* the legal themes deployed in the analysis. A prisoner who comes up with ten different ways to contest his sentence still is litigating about a single transaction or occurrence (the supposedly unlawful sentence), so an amendment necessarily relates back under Rule 15(c)(2). This is pretty much the conclusion we reached in *Johnson*, although that case concerned the question whether an amendment (before decision in the district court) kicks off a new collateral attack that requires appellate approval. An amendment that is not treated as a new challenge when counting multiple collat-

eral attacks also is not a new challenge that must independently satisfy the statute of limitations.

Decisions such as *Hicks*, *Thomas*, and *Pittman* do not explain why Rule 15(c)(2) has one meaning for most civil litigation, and a different meaning for a collateral attack. They stress that the AEDPA is designed to expedite resolution of collateral attacks, but this concern should influence the exercise of discretion under Rule 15(a)—which gives the district judge the right to disapprove proposed amendments that would unduly prolong or complicate the case—rather than lead to a special reading of Rule 15(c)(2). We do not see how it would be possible to follow *Hicks*, *Thomas*, and *Pittman*, or similar cases elsewhere, without overruling our opinion in *Johnson*, which held that amendments to the pleadings in collateral attacks should be treated like amendments to the pleadings in other civil suits, and that the articulation of a new legal theory therefore is *not* a new claim. Otherwise each amendment (even one within the one-year period of limitations) would initiate a new collateral attack—which is to say that the pleadings could not be amended at all, for a successive collateral attack requires prior appellate approval. *Hicks*, *Thomas*, and *Pittman* do not attempt to harmonize their treatment of Rule 15 with the need to avoid an approach that defines all amendments as second or successive collateral attacks. Indeed, the other circuits do not evince awareness of the link between relation back and the definition of a new collateral attack; none cites *Johnson*. So although our opinion leaves in its wake a conflict among the circuits about the application of Rule 15(c)(2) to collateral attacks, this conflict was created by other circuits' inattention to *Johnson* rather than by our decision today. (The decisions from other circuits, which read "claim" to mean "legal theory," also are hard to reconcile with our decision in *Brannigan*.)

Our understanding of Rule 15(c)(2) just *permits* and does not *compel* a district judge to accept the amended complaint; amendment still must be appropriate under the criteria of Rule 15(a), which permit the district judge to consider the goals of the AEDPA. Thus in *Rodriguez* we held that a district judge did not abuse his discretion in refusing to allow an amendment to the pleadings to add a contention based on *Apprendi*. The amendment was not proposed in *Rodriguez* until a few days after final decision had been entered, and rejection of a post-decision amendment almost never can be an abuse of discretion. (Indeed, once the time for appeal has run, any post-decision amendment would be a second or successive collateral attack that no district judge may authorize. That's the line drawn in *Johnson*.) In Ellzey's case, by contrast, the proposed amendment came before final decision, and the district judge exercised in Ellzey's favor the discretion granted by Rule 15(a). That, too, was not an abuse of discretion, and as a result every legal theory in Ellzey's collateral attack satisfies §2255 ¶6.

Nonetheless, Ellzey is entitled to a certificate of appealability "only if [he] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). See *Miller-El v. Cockrell*, 123 S. Ct. 1029 (2003). The lead argument in Ellzey's application for a certificate of appealability is that the district court erred by failing to rule on the question whether *Apprendi* is retroactive. Yet the judge did address this issue and, following *Curtis v. United States*, 294 F.3d 841 (7th Cir. 2002), held that *Apprendi* is not retroactive. No court of appeals has held otherwise, so this is not a substantial constitutional issue (even though Ellzey's sentence of life imprisonment, which depends on increasing the statutory maximum under 21 U.S.C. §841(b)(1)(A)(ii), otherwise would be open to challenge). His remaining arguments, all dealt with carefully by the district judge, are insubstantial individually and collectively. The applica-

tion for a certificate of appealability therefore is denied, and the appeal is dismissed.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*