**Jacoby Lee FELIX, Petitioner–Appellant,**

v.

**Deneice A. MAYLE, Warden, Respondent–Appellee.**

No. 02–16614.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2003.

Submission Withdrawn April 13, 2004.

Resubmitted July 8, 2004.

Filed Aug. 9, 2004.

David M. Porter, Assistant Federal Defender, Sacramento, CA, for the petitioner-appellant.

Mathew Chan, Deputy Attorney General, Sacramento, CA, for the respondent-appellee.

Before: CANBY, JR., W. FLETCHER, and TALLMAN, Circuit Judges.

CANBY, Circuit Judge:

This case, in which state prisoner Jacoby Lee Felix seeks a federal writ of habeas corpus to overturn his state conviction, presents an important question of federal civil procedure that has divided other circuits. The question is this: when a habeas petitioner challenging a state conviction amends his federal petition to include a new claim, does the amendment relate back to the date of filing of his petition and thus avoid the one-year limitation of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1)? That question in turn depends upon the interpretation of Federal Rule of Civil Procedure 15(c)(2), which provides that an amendment relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading." We join the Seventh Circuit in concluding that a prisoner's new claim arises out of the same transaction or occurrence as his original petition because the transaction or occurrence in issue is his state trial and conviction. See Ellzey v. United States, 324 F.3d 521 (7th Cir. 2003).[1] The claim thus relates back under Rule 15(c)(2). We accordingly reverse the ruling of the district court holding Felix's claim of coerced confession to be time-barred.

Felix also argues that the district court erred in dismissing his Confrontation Clause claim on the merits. We find no error, and we accordingly affirm the district court's dismissal of the Confrontation Clause claim.

**FACTUAL BACKGROUND**

In 1995, Felix was convicted of first degree murder and second degree robbery in California state court. On appeal to the California Court of Appeal, he argued that the admission into evidence of videotaped statements of a key prosecution witness violated his Sixth Amendment right to confront the witnesses against him. The Court of Appeal affirmed the judgment. The California Supreme Court subsequently denied Felix's Petition for Review and his state conviction became final on August 12, 1997.

On May 8, 1998, Felix filed in federal district court a *pro se* petition for writ of habeas corpus raising the same arguments that were raised in his state appeal. AEDPA's one-year statute of limitations for habeas relief expired on August 11, 1998. On January 28, 1999, Felix filed, through counsel, an amended petition that included the Confrontation Clause claim asserted in the original petition and an additional claim, which alleged that the state court violated his right to due process and his Fifth Amendment right against self-incrimination by admitting into evidence allegedly involuntary statements that Felix had made during a police interview. The district court accepted the recommended finding of the magistrate judge that the coerced confession claim did not relate back under Rule 15(c)(2) because it did not arise from the "same core of facts" as the Confrontation Clause claim. The court accordingly held the coerced confession claim to be time-barred by AEDPA's one-year limitation.

Felix filed a timely notice of appeal and the district court issued a certificate of appealability for the coerced confession

1. *Ellzey* and cases to be discussed later from other circuits that conflict with *Ellzey* arose in the context of challenges to federal convictions or sentences under 28 U.S.C. § 2255, but their reasoning applies equally to cases like Felix's that challenge state convictions under 28 U.S.C. § 2254.

and Confrontation Clause claims. We have jurisdiction under 28 U.S.C. § 2253 and we review the district court's decision *de novo*. *See Clark v. Murphy*, 331 F.3d 1062, 1067(9th Cir.2003).

## DISCUSSION

### A

■ Rule 15(c) applies to federal habeas corpus cases. *See Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir.2000). That Rule provides, among other things:

[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

■ Fed.R.Civ.P. 15(c)(2). In other civil litigation, we have required relation-back of new claims arising from the same "conduct, transaction, or occurrence" as the claim in the original complaint, even when the new claims are based on a different legal theory of which there was no warning in the original pleading. *See Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 736 (9th Cir.1988). We fail to see why this literal application of Rule 15(c) should not apply to habeas corpus proceedings.

The Confrontation Clause claim asserted by Felix in his original federal petition arose from the trial that ended with his conviction in state court. His coerced confession claim arises from the same transaction—his trial and conviction in state court. Both claims assert that the conviction was tainted by unconstitutional evidence introduced at his trial. The fact that the claims differ does not mean that they arise from different occurrences. It unduly strains the usual meaning of "conduct, transaction, or occurrence" to regard a criminal trial and conviction as a series of perhaps hundreds of individual occurrences. The Seventh Circuit explained that in such an approach:

[e]ach step of the trial, and each legal argument, becomes a separate transaction or occurrence. Yet this is not how the phrase "conduct, transaction, or occurrence" is used in civil practice. That phrase sums up the "same transaction" approach to the law of preclusion (and thus to compulsory joinder): all legal issues and claims for relief arising out of a single transaction may (and often must) be raised together, and Rule 15(c) specifies that anything that would be barred, if not brought now, may be added and litigated.

*Ellzey*, 324 F.3d at 526. We agree with *Ellzey* that the proper "conduct, transaction, or occurrence" in a habeas context is the trial and conviction under attack.

The language of Rule 15(c)(2) supports our conclusion. It provides for the relation back of a "claim" added by amendment if the new claim arises from the same conduct, transaction or occurrence set forth in the original pleading. A new "claim" will nearly always rest on a legal theory, and often on a subset of facts within the larger transaction or occurrence, that differs from those underlying the claim asserted by the original pleading. That is the reason that an amendment becomes necessary. But if such differences are sufficient to prevent relation back under Rule 15(c)(2), that provision of the Rule will be rendered virtually meaningless in the habeas context.

We accordingly disagree, respectfully, with the decisions of several circuits that deny relation back under Rule 15(c)(2) when a new claim rests on a theory or facts within a trial not raised in the original habeas petition. *See United States v. Hicks*, 283 F.3d 380, 388 (D.C.Cir.2002);

*Davenport v. United States,* 217 F.3d 1341, 1344–45 (11th Cir.2000); *United States v. Pittman,* 209 F.3d 314, 317–18(4th Cir. 2000); *United States v. Duffus,* 174 F.3d 333, 337–38 (3rd Cir.1999); *United States v. Craycraft,* 167 F.3d 451, 457 (8th Cir. 1999). We distinguished these cases in *Anthony,* 236 F.3d at 577, but neither endorsed nor rejected their rule because we found it unnecessary to "determine here the full scope of [Rule 15(c)(2)'s] application to amendments of habeas petitions." *Id.* at 576. Today we cannot distinguish these cases, and so we reject their rule in favor of that of *Ellzey.*

One of the concerns expressed in some of these cases and in the dissent here is that interpreting "conduct, transaction, or occurrence" in the usual, less restrictive manner would erode the effectiveness of AEDPA's one-year statute of limitations. *See, e.g., Hicks,* 283 F.3d at 388. AEDPA, however, still requires the original petition to be filed within the one-year period (with exceptions not relevant here). Giving effect to Rule 15(c)(2) does not, therefore, nullify AEDPA's one-year period.[2] On the other hand, precluding relation back of new claims effectively nullifies Rule 15(c)(2) in habeas proceedings. We decline to read Rule 15(c)(2) in a way that contravenes the ordinary meaning of its language and renders it meaningless in the habeas context. As the Seventh Circuit pointed out, abuses of Rule 15 can be controlled by the district court under subsection (a), which requires leave of court to file an amendment after a responsive

pleading has been filed.[3] *See* Fed.R.Civ.P. 15(a); *Ellzey,* 324 F.3d at 527.

The State argues here that, even if the usual definition is given to the term, Felix's two claims do not arise from the same "conduct, transaction, or occurrence" within the meaning of Rule 15(c)(2). The State argues that the coerced confession claim arises out of an interrogation of Felix conducted by police on October 28, 1993, while the Confrontation Clause claim is based on statements voluntarily made by a witness more than three months later. This argument, however, ignores the nature of Felix's habeas challenge. Felix is not bringing a civil action to recover damages for the alleged coercion exerted by police at the time they secured his confession, and he certainly asserts no claim based on the voluntary statement made by another person at another time. He is challenging the usual subject of a habeas petition-the custody that results from his conviction and trial. His coerced confession claim and Confrontation Clause claim assert that the Constitution was violated by the introduction of his confession and the witness's statement *at his trial.* Except for the use of these statements at his trial, Felix can state no habeas claim. We therefore reject the State's contention that we should look beyond the events of the trial to find the "conduct, transaction, or occurrence" that is the subject of Felix's claims.

We also reject the State's contention that permitting Felix's claims to relate back will frustrate the purpose of Rule

---

**2.** In asserting that our decision "obliterates AEDPA's one year statute of limitation," Judge Tallman's dissent undervalues the strict requirement that the original federal habeas petition be filed within that time. The dissent also fails to take account of the very considerable incentive for a state prisoner to file all of his or her claims in the original petition or by amendment as soon thereafter as possible. If the prisoner delays, final judgment may be

entered on the unamended petition, and the prisoner will almost certainly be unable to meet the strict requirements for a second petition to address the additional claim. *See* 28 U.S.C. § 2244(b)(2).

**3.** In general, however, "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

15(c)(2) to give notice to the non-moving party that such an amendment might be contemplated. It is true that, in *Anthony,* 236 F.3d at 576–77, we held that the State clearly had notice of claims sought to be added by amendment. But that was only one way of rejecting the State's argument in *Anthony* that notice beyond identity of "conduct, transaction, or occurrence" was required. We long ago rejected the argument that relation back under Rule 15(c)(2) required a "fair warning" of the amendment beyond the warning inherent in, and required by, the language of the rule. *Kern Oil,* 840 F.2d at 736. "Under Rule 15, the only question is whether the later claims arise out of the conduct, transaction, or occurrence brought to the defendant's attention by the initial claim." *Id.* Here, Felix's initial petition brought his trial and conviction to the attention of the State, and it could anticipate amendments challenging allegedly unconstitutional rulings at that trial. Rule 15(c)(2) as interpreted in *Kern Oil* requires no more.[4]

▪ We conclude, therefore, that the district court erred in ruling that Felix's coerced confession claim did not relate back to his initial petition under Rule 15(c)(2). We accordingly reverse the district court on this point and remand for further proceedings with respect to that claim.[5]

## B

The remaining issue raised by Felix concerns his Confrontation Clause claim. He contends that the state court violated his right to confront witnesses by admitting into evidence portions of a videotaped interview given by a key prosecutorial witness, even though the witness denied any memory of the interview at trial. The circumstances indicated strongly that the witness's loss of memory was feigned. Felix argues that his right to cross-examine was effectively nullified.

▪ Felix is entitled to relief from his state court conviction only if the state court's ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (explaining AEDPA's standard). We conclude that Felix fails to meet that standard. The Supreme Court has held that the Confrontation Clause of the Sixth Amendment is not violated by the admission of a prior identification by a witness who is unable, because of memory loss, to testify concerning the basis for the identification. *United States v. Owens,* 484 U.S. 554, 564, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). Although *Owens* did not address the question of a witness who *feigned* memory loss, no other Supreme Court decision has addressed that point either. The state court's decision that the admission of a videotaped statement of a witness who is unable, because of *feigned* memory

---

4. Our decision in *Ford v. Hubbard,* 330 F.3d 1086 (9th Cir.2003), has no bearing on our ruling here because it was vacated and reversed in *Pliler v. Ford,* — U.S. —, 124 S.Ct. 2441, 159 L.Ed.2d 338, 2004 WL 1373174 (U.S. June 21, 2004). It therefore has no precedential effect. *See Roe v. Anderson,* 134 F.3d 1400, 1404(9th Cir.1998). The Supreme Court in *Pliler* declined to reach any issues of relation back under Rule 15.

5. Our disposition of this issue renders it unnecessary for us to address in detail Felix's contention that the State waived its defense based on AEDPA's one-year limitation. Suffice it to say that, in urging the district court to rule on both the limitation and the merits, the State did not waive its limitation defense.

loss, to testify concerning the basis for the statement is not contrary to nor an unreasonable application of *Owens,* nor of any other Supreme Court case.

Felix argues that the state court's ruling was contrary to *Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), in which the Supreme Court held that admission of a prior statement by a witness who, at trial, claimed a Fifth Amendment right not to respond, violated the Sixth Amendment. *Douglas* is distinguishable, however, because there was no way to cross-examine the witness who had invoked the Fifth Amendment on the subject. In the present case, as in *Owens,* Felix was free to cross-examine the witness on "such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination ...) the very fact that he has a bad memory." *Owens,* 484 U.S. at 559, 108 S.Ct. 838. The state court's ruling was not contrary to, nor an unreasonable application of, either *Owens* or *Douglas,* nor did it involve an unreasonable determination of the facts. We therefore affirm the district court's dismissal of this claim.[6]

## CONCLUSION

Felix's coerced confession claim relates back under Federal Rule of Civil Procedure 15(c)(2) to his timely original petition because it arose out of the same conduct, transaction, or occurrence set forth in his original pleading-namely, his state trial and conviction. We reverse the district court's dismissal of that claim and remand

for further proceedings with regard to it. We affirm the district court's dismissal of Felix's Confrontation Clause claim.

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

TALLMAN, Circuit Judge, concurring in part and dissenting in part:

### I

Today the court holds that the petitioner's newly-minted and untimely-raised coerced confession claim is saved by the "relation back" doctrine of Fed.R.Civ.P. 15(c)(2) because it "arises from the same transaction—his trial and conviction" as petitioner's timely-filed Confrontation Clause claim. By defining "conduct, transaction, or occurrence" so broadly that any claim stemming from pre-trial motions, the trial, or sentencing relates back to a timely-filed habeas petition, the court obliterates AEDPA's one year statute of limitation.

The majority of those circuits to consider the intersection of Rule 15(c) and Congress' strict statute of limitation have more narrowly interpreted "conduct, transaction, or occurrence" to mean that in order to relate back, "the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.' " *Davenport v. United States,* 217 F.3d 1341, 1344 (11th Cir. 2000).[1] I would follow this better reasoned rule because it pays proper respect to the limitation period established by AEDPA.

---

**6.** Our rejection of Felix's Confrontation Clause claim on the merits makes it unnecessary for us to address the State's alternative contention that Felix is seeking the benefit of a new rule that could not be applied retroactively to his case. *See Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

**1.** *Accord United States v. Hicks,* 283 F.3d 380, 389 (D.C.Cir.2002); *United States v. Pittman,* 209 F.3d 314, 318 (4th Cir.2000); *United States v. Duffus,* 174 F.3d 333, 337 (3d Cir. 1999); *United States v. Craycraft,* 167 F.3d 451, 457 (8th Cir.1999).

I thus respectfully dissent from Section A of the court's opinion. I agree with the court that the petitioner's Confrontation Clause claim fails on the merits.

## II

The "relation back" doctrine is not easily applied to habeas corpus petitions. Habeas corpus litigation is, by definition, a collateral attack on the finality of a criminal judgment following direct appeal or a conscious decision to forgo direct attack. Although we have held that Rule 15 applies to habeas petitions, *Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir.2000), we have never considered the limits of how such amendments interact with the limitation period. In doing so, we must keep in mind that by enacting strict time restrictions on the filing of habeas petitions, Congress obviously intended to expedite the processing of collateral attacks. *See United States v. Hicks*, 283 F.3d 380, 389 (D.C.Cir. 2002).

In this case, there have already been several rounds of criminal and civil collateral review at all levels of the California trial and appellate court system, which spanned three years. The petitioner timely filed his original pro se habeas petition in federal court on May 8, 1998, within the limitation period. Although well aware of the facts supporting his coerced confession claim when he filed this original petition, he waited nine months to amend it and add the new claim. Petitioner is certainly entitled to continue testing the validity of his otherwise final state first-degree murder conviction by now proceeding in federal court. But the law requires him to bring all of the claims about which he clearly possesses the facts in a timely-filed habeas petition. *See United States v. Pittman*, 209 F.3d 314, 318 (4th Cir.2000) (finding that petitioner's claims in the amended petition "were not overly technical and he could have easily included them in his original [petition]").

Rejecting this court's interpretation of "conduct, transaction, or occurrence" as too expansive, our sister circuits have observed:

Yet this holding views "occurrence" at too high a level of generality. The fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c). If we were to craft such a rule, it would mean that amendments ... would almost invariably be allowed even after the statute of limitations had expired, because most [habeas] claims arise from a criminal defendant's underlying conviction and sentence. Such a broad view of "relation back" would undermine the limitations period set by Congress in the AEDPA.

*Pittman*, 209 F.3d at 318.

The better rule is that enunciated by the Eleventh Circuit in *Davenport*:

In order to relate back, the untimely claim must have arisen from the "same set of facts" as the timely filed claim, not from separate conduct or a separate occurrence in "both time and type."

217 F.3d at 1344. The whole point of enacting AEDPA was to eliminate drawn-out and unlimited collateral attacks on criminal judgments. *See Hicks*, 283 F.3d at 389; *Pittman*, 209 F.3d at 318. In its zeal to allow this late claim to be addressed on the merits, the court invokes the "relation back" doctrine to swallow AEDPA's statute of limitation, rendering it a virtual nullity through which an unlimited number of amendments must be liberally permitted so long as the original collat-

eral attack was timely filed.[2]

## III

The court glosses over the fact that by applying the "relation back" doctrine in these circumstances, the original petition utterly failed to give fair notice to the State of the petitioner's new claim. The court relies on *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730 (9th Cir. 1988), which involved a typical civil action for breach of contract and fraud, for the proposition that notice is irrelevant. However, in *Anthony v. Cambra*, 236 F.3d 568 (9th Cir.2000), we acknowledged that the notice inquiry is indeed proper in the application of Rule 15(c) to amend habeas petitions. My colleagues unpersuasively distinguish our discussion of Rule 15(c) in *Anthony*, where we held that a petitioner's amended petition related back because each of its specific claims had been set forth in the original petition. *Id.* at 576. Relying on the guiding principle that "the touchstone of Rule 15(c) is notice," we found that "it is plain that the central policy of Rule 15(c)—ensuring that the non-moving party has sufficient notice of the facts and claims giving rise to the proposed amendment—ha[d] been satisfied." *Id.* (distinguishing the results in *Duffus* and *Craycraft* because "in those cases, the courts specifically relied on the *absence* of notice to the state regarding the content of the proposed amendments as grounds for denying the motions").

Not only is the requirement of fair notice supported by our court's own prece-

dent, this rationale has also been adopted by our sister circuits. In *Craycraft*, the Eighth Circuit relied on the lack of sufficient notice to find that an amendment did not relate back:

> Craycraft's original complaint alleged deficiencies of representation distinctly separate from the deficiency alleged in his amendments. Failing to file an appeal is a separate occurrence in both time and type from a failure to pursue a downward departure or failure to object to the type of drugs at issue. We cannot say that his original petition would provide notice of such a different sort of theory. Therefore, the amendment cannot relate back under Rule 15(c) and it must be time barred.

*Id.* Neither my colleagues nor the Seventh Circuit in *Ellzey v. United States*, 324 F.3d 521 (7th Cir.2003), which the court embraces, have offered a convincing reason to deviate from "the central policy of Rule 15(c)—ensuring that the non-moving party has sufficient notice of the facts and claims giving rise to the proposed amendment." *Anthony*, 236 F.3d at 576.

## IV

In this case, the petitioner's timely-filed claim alleged that his Sixth Amendment right to confront witnesses was violated when the court admitted during his 1995 trial a videotaped police interview of one of the State's witnesses. The petitioner's untimely claim alleges that the trial court improperly denied a pre-trial motion to

---

**2.** The court states that the more narrow interpretation underestimates the incentive for a petitioner to file on time because of the possibility that the district court might rule on the petition before he files an amendment. It is the court that underestimates the amount of time required by our district judges to consider and resolve habeas petitions. This case, pending for four years and three months be-

fore entry of final judgment, is a good example. Under the court's expansive invocation of Rule 15(c), petitioner presumably could have amended his petition any number of times as long as "justice so require[d]." District courts would have difficulty ever bringing habeas cases to a close if the broad rule preferred by my colleagues is allowed to stand.

suppress petitioner's incriminating statement made to police on October 28, 1993. Here, it simply cannot be said that these claims arise from the same set of facts; rather, they arise from distinctly separate occurrences of both time and type. *See Hicks*, 283 F.3d at 389 (holding that a claim that the government failed to prove the quantity of drugs at trial did not relate back to a timely-filed claim that the government's willingness to grant leniency in exchange for testimony tainted the petitioner's trial).[3]

### V

While an amendment offered to clarify or amplify the facts already alleged in support of a timely claim may relate back, an amendment that introduces a new legal theory based on facts different from those underlying the timely claim may not. *See Hicks*, 283 F.3d at 388. "These principles are faithful both to the underlying purposes of Rule 15(c) and to the concerns about drawn-out and unlimited collateral attacks on ... criminal judgments evinced by the passage of AEPDA. They ensure that relation back will be allowed only where the original motion provides adequate notice of the [petitioner's] claims and the proposed amendment would neither change the fundamental nature of those claims nor prejudice the[State's] defense by requiring it to prepare its case anew." *Id.* at 389.

The petitioner's original habeas petition challenging the introduction of his former co-defendant's videotaped interview was timely. "His amendments thereto were not." *Craycraft*, 167 F.3d at 456. I respectfully dissent from application of the "relation back" doctrine to preserve his amended but time-barred coerced confession claim simply because it relates to his underlying conviction and sentence.

---

**3.** *See also Davenport*, 217 F.3d at 1346 (newly offered claims of ineffective assistance of counsel did not relate back to timely-filed claims of ineffective assistance of counsel because they were raised on different sets of facts); *Pittman*, 209 F.3d at 317–18 (claims regarding obstruction of justice enhancement and failure of counsel to file an appeal did not relate back to claims that the district court lacked jurisdiction to impose an enhanced sentence and the government failed to establish by a preponderance of the evidence that the drugs at issue were crack cocaine); *Duf-fus*, 174 F.3d at 337–38 (claim of ineffective assistance of counsel for failing to move to suppress evidence did not relate back to claim of ineffective assistance of counsel for failing to contend on appeal that evidence was insufficient to support conviction); *Craycraft*, 167 F.3d at 457 (deficiencies of representation alleged in timely-filed petition were separate from the deficiencies alleged in the untimely amended claims because "[f]ailing to file an appeal is a separate occurrence in both time and type from a failure to pursue a downward departure or failure to object to the type of drugs at issue").