**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RONALD ROSS,
                *Petitioner-Appellant,*

v.

WILLIAMS, Warden; ATTORNEY
GENERAL FOR THE STATE OF
NEVADA,
                *Respondents-Appellees.*

No. 16-16533

D.C. No.
2:14-cv-01527-
JCM-PAL

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, Senior District Judge, Presiding

Argued and Submitted December 5, 2017
San Francisco, California

Filed July 19, 2018

Before: Milan D. Smith, Jr. and Sandra S. Ikuta, Circuit
Judges, and John D. Bates,[*] District Judge.

Opinion by Judge Ikuta;
Dissent by Judge Bates

---

[*] The Honorable John D. Bates, United States Senior District Judge
for the District of Columbia, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's judgment dismissing as untimely California state prisoner Ronald Ross's amended habeas corpus petition brought pursuant to 28 U.S.C. § 2254.

Ross argued that the claims in his new petition, prepared with the assistance of counsel, arose out of facts set out in a state court order attached to his pro se original petition, and that the district court therefore erred in failing to apply the relation back doctrine in Fed. R. Civ. P. 15(c).

The panel held that because Ross did not comply with Rule 2(c) of the Rules Governing Section 2254 Cases either directly or by incorporating (or attempting to incorporate) the facts in the Nevada Supreme Court affirmance into his original petition, that petition does not provide an aggregation of facts that can support the claims in his amended petition. The panel concluded that the district court therefore did not err in concluding that Ross's amended petition cannot relate back to the claims in his original petition.

Dissenting, District Judge Bates wrote that this court should liberally construe Ross's pro se original petition as setting out facts discussed in the attached state court decision, and should then remand for the district court to determine in the first instance whether the claims in the amended petition

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

arose out of the conduct, transaction, or occurrence set out in his original petition.

---

**COUNSEL**

Jonathan M. Kirshbaum (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Petitioner-Appellant.

Lawrence VanDyke (argued), Solicitor General; Matthew S. Johnson, Deputy Attorney General; Adam Paul Laxalt, Attorney General; Office of the Attorney General, Carson City, Nevada; for Respondents-Appellees.

---

**OPINION**

IKUTA, Circuit Judge:

Ronald Ross filed an amended habeas petition eight months after the statute of limitations under Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) had run. The district court dismissed it as untimely and rejected Ross's argument that it related back to his original, timely petition. Ross argues that the claims in his new petition arose out of facts set out in a state court order attached to his original petition, and therefore the district court erred in failing to apply the relation back doctrine in Rule 15(c) of the Federal Rules of Civil Procedure (Civil Rule 15(c)). Because the facts set out in the state court order were not clearly incorporated into Ross's original petition, and Rule 2 of the Rules Governing Section 2254 Cases in the United States

District Courts (Habeas Rule 2) precludes the court from construing the petition as incorporating such facts, we affirm.

I

In 2009, Ronald Ross was convicted by a Nevada jury of several theft-related offenses. Ross, who had at least five prior felony convictions, including one for larceny, was sentenced under Nevada's habitual offender statute to a lifetime term of imprisonment with parole eligibility after 20 years. *See* Nev. Rev. Stat. §§ 207.010–.016. Ross timely appealed his conviction and sentence, and on November 8, 2010, the Nevada Supreme Court affirmed. Because Ross did not petition for certiorari, the Nevada Supreme Court's judgment became final on February 7, 2011, and AEDPA's one-year limitation period for Ross to file a federal habeas petition began to run. *See* 28 U.S.C. § 2244(d)(1)(A).

On November 30, 2011, Ross timely filed a pro se petition for post-conviction relief (PCR) in Nevada state court, temporarily tolling the one-year period for his federal habeas petition. *See* 28 U.S.C. § 2244(d)(2). Ross asserted five claims for relief, including violations of his right to a speedy trial, and various theories of ineffective assistance of counsel. Ross also attached a 22-page handwritten memorandum, setting forth in great detail the factual bases for his claims. Ross repeatedly referred to this memorandum when the form petition asked for "supporting facts" for his claims. After Ross was appointed counsel, he filed a supplemental PCR petition, asserting six specific claims, as well as a claim that the cumulative effect of the alleged errors amounted to ineffective assistance of counsel.

The state trial court denied Ross's amended PCR petition, and the Nevada Supreme Court affirmed on July 30, 2014. The Nevada Supreme Court's affirmance identified and rejected eight specific arguments for ineffective assistance of counsel, in addition to the cumulative error claim.[1] The Nevada Supreme Court's remittitur issued on August 18, 2014, and AEDPA's one-year limitation period began to run again the next day. *See* 28 U.S.C. § 2244(d)(2); *Jefferson v. Budge*, 419 F.3d 1013, 1015 n.2 (9th Cir. 2005).

On September 14, 2014, Ross filed a timely pro se habeas petition in the U.S. District Court for the District of Nevada. Ross used the form "Petition for a Writ of Habeas Corpus

---

[1] The Nevada Supreme Court addressed Ross's claims that his counsel was ineffective for:

(1) "failing to engage in pretrial discovery";

(2) "violating [Ross's] right to a speedy trial";

(3) allowing "a communication breakdown [that] prevented [Ross] from being able to assist counsel in the preparation of his defense";

(4) "failing to object to expert testimony";

(5) "failing to retain a defense expert";

(6) "failing to properly challenge the use of a preliminary-hearing transcript";

(7) "failing to renew at trial his preliminary-hearing objection for violating the best evidence rule"; and

(8) "failing to raise certain objections during the State's closing arguments and at sentencing and for failing to move post-verdict to dismiss the case for lack of evidence."

Pursuant to 28 U.S.C. § 2254 By a Person in State Custody" promulgated by that district court in its local rules. *See* Habeas R. 2(d).[2] The habeas petition form stated: "Attach to this petition a copy of all state court written decisions regarding this conviction." The habeas petition form also provided detailed instructions, which guided habeas petitioners on how to fill in the blanks in each section of the form in order to explain each of their separate grounds for relief. The form begins with the instruction that the petitioner should "[s]tate concisely every ground" for habeas relief and "[s]ummarize briefly the facts supporting each ground." It also provided that Ross could "attach up to two extra pages stating additional grounds and/or supporting facts." The form further cautioned that Ross "must raise in this petition all grounds for relief that relate to this conviction. Any grounds not raised in this petition will likely be barred from being litigated in a subsequent action."

At the top of the template for each ground for relief, the form contained the following sentence "I allege that my state court conviction and/or sentence are unconstitutional, in violation of my ___ Amendment right to _____, based on these facts: _____ . . . ." Ross alleged three grounds for relief in the space provided by the form, alleging violations of his Fifth Amendment right to due process, his Sixth Amendment right to effective counsel, and his Fourteenth Amendment rights to due process and equal protection. In the space provided for supporting facts,

---

[2] As discussed in detail, *infra* Part III.A, the Rules Governing Section 2254 Cases in the United States District Courts (or "Habeas Rules") apply to Ross's petition. Habeas Rule 2(d) provides that "[t]he petition must substantially follow either the form appended to these rules [(the national form)] or a form prescribed by a local district-court rule."

however, Ross wrote substantially the same thing under each ground:

> Counsel was ineffective for failing to:
>
> 1) Secure a speedy trial
>
> 2) Failed to review evidence and adequately prepare
>
> 3) Failed to file pretrial motions
>
> 4) Failed to argue the prejudice of evidence lost prior to trial
>
> 5) Failed to prepare for jury selection
>
> 6) Failed to prepare for trial
>
> 7) Failed to retain defense experts
>
> 8) Failed to object to the state's use of expert witness.

Ross also attached a handwritten affidavit explaining the reasons for his delay in obtaining a copy of the Nevada Supreme Court's ruling. Ross's affidavit explained that he was not listed on either the distribution list for the Nevada Supreme Court's order of affirmance on July 22, 2014,[3] nor

---

[3] Ross's affidavit stated: "[O]n the date of 22 July 2014, the Nevada Supreme Court issued an Order of Affirmance denying the appeal of my state post-conviction writ of habeas corpus (see attached order). That it

on the distribution list for the court's remittitur on August 18, 2014. The affidavit further alleged that Ross did not receive a copy of the order of affirmance until September 11, 2014, as demonstrated by his signature and time stamp on the front of the envelope. To document both his absence from the distribution lists and the date he received the order of affirmance, he attached: (1) a copy of the Nevada Supreme Court's order of affirmance; (2) a copy of the Nevada Supreme Court's remittitur; (3) an envelope from his counsel; and (4) a letter from his counsel dated September 2, 2014, transmitting a copy of the Nevada Supreme Court's order.

The district court appointed counsel for Ross, and on June 8, 2015, Ross filed an amended petition, raising 11 grounds for relief.[4] This petition was filed nearly eight months after

_____

is noticed that petitioner Ronald Ross is *not* listed on the distribution for the order of affirmance."

[4] These were that: (1) Ross's Sixth Amendment confrontation right was violated when "the prosecution was allowed to admit the preliminary hearing testimony of a witness even though the prosecution did not make a sufficient showing that the witness was unavailable"; (2) Ross's Sixth Amendment right to a speedy trial was violated "when the case was continued at the state's request for 541 days"; (3) the evidence against Ross was insufficient to support his conviction; and (4) Ross's Sixth Amendment right to counsel was violated when trial counsel failed (a) to "protect Ross's right to a speedy trial"; (b) to "communicate with [Ross] prior to trial"; (c) to "seek [an] appropriate sanction" for the state's failure to preserve the allegedly exculpatory surveillance video; (d) to "object based on [the] best evidence rule" to a police detective's testimony about the content of that video; (e) to object to the detective's testimony about "distract thefts," which Ross argued was expert testimony; (f) to call a defense expert to rebut the detective's testimony; (g) to object to the admission of the preliminary hearing testimony that allegedly violated Ross's confrontation rights; and (h) to "raise mitigating arguments at sentencing."

AEDPA's one-year limitation period had expired. After the district court ordered a response, the state moved to dismiss Ross's amended petition as barred by the statute of limitations. The district court granted Nevada's motion to dismiss. It rejected Ross's argument that the facts contained in the Nevada Supreme Court's order of affirmance were incorporated in the original petition, and therefore rejected his contention that the claims in his new petition related back to the date of the original pleading. Nevertheless, the court granted a certificate of appealability on that issue.

We have jurisdiction under 28 U.S.C. § 2253, and we review de novo a district court's dismissal of an application for a writ of habeas corpus. *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001).

II

Ross does not dispute that his new petition would be barred by the AEDPA statute of limitations unless it relates back to the original petition pursuant to Civil Rule 15(c). We therefore begin by considering the requirements of this rule in the habeas context.

Civil Rule 15(c) allows an amendment to a pleading after the statute of limitations has run to relate back to the original pleading if it arises out of the same "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c). This rule is applicable to a habeas petition. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005). "The 'original pleading' to which Rule 15 refers is *the complaint* in an ordinary civil case, and *the petition* in a habeas proceeding." *Id.* (emphasis added).

*Mayle* provides guidance on what constitutes the same "conduct, transaction, or occurrence" in the context of a habeas petition. *Id.* at 656–59. The petitioner in that case had raised to the state court a Fifth Amendment claim based on the admission of statements made during the petitioner's pretrial interrogation and a Sixth Amendment claim based on the admission of videotaped statements made by a prosecution witness. *Id.* at 650. In a timely *pro se* habeas petition, the petitioner raised the Sixth Amendment claim, but not the Fifth Amendment claim. *Id.* at 651. Five months after AEDPA's statute of limitations had run, the petitioner sought to amend his petition to include a Fifth Amendment claim, arguing that the claim could relate back under Civil Rule 15(c) because "both . . . claims challenged the constitutionality of the same criminal conviction." *Id.* at 652. The Ninth Circuit agreed, reasoning that "the relevant 'transaction' for purposes of Rule 15(c)(2) was [petitioner's] 'trial and conviction in state court.'" *Id.* at 653 (quoting *Felix v. Mayle*, 379 F.3d 612, 615 (9th Cir. 2004)).

The Supreme Court rejected this interpretation of "conduct, transaction, or occurrence." *Id.* at 659. Instead, *Mayle* held that "relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." *Id.* (internal quotation marks and citation omitted). Even though petitioner's Sixth Amendment confrontation claim and Fifth Amendment privilege against self-incrimination claim made constitutional challenges to the admission of pretrial statements, these claims had to be "pleaded discretely" because they involved "separate congeries of facts supporting the grounds for relief," under Habeas Rule 2(c). *Id.* at 661. Each of these "separate congeries of facts," *Mayle* explained, "would delineate an 'occurrence.'" *Id.* In other words, for purposes of Civil Rule

15(c), an "occurrence" is an aggregation of facts supporting a discrete claim for relief, and a new claim must arise from the same aggregation of facts set forth in the earlier petition in order to relate back. An amendment cannot relate back to "facts that differ in both time and type from those the original [petition] set forth." *Id.* at 650.

*Mayle* also highlighted the flaws in the rejected Ninth Circuit approach, under which "[a] miscellany of claims for relief could be raised later rather than sooner and relate back." *Id.* at 661. According to the Supreme Court, such an approach, which would define "conduct, transaction, or occurrence" to "encompass any pretrial, trial, or post-trial error that could provide a basis for challenging the conviction," would not only be too general, but would be contrary to Congress's intent in enacting the AEDPA statute of limitations. *Id.* at 661–62. "Congress enacted AEDPA to advance the finality of criminal convictions," in part by adopting a tight time line. *Id.* at 662. "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id.* "Given AEDPA's 'finality' and 'federalism' concerns," *Mayle* held that this interpretation of Civil Rule 15's application to habeas proceedings was untenable. *Id.* at 663 (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)).

In light of *Mayle*'s strictures, Ross's amended petition may relate back to the original petition only if that petition set forth an aggregation of facts from which his new claims arise. The petition form contains no facts at all. Instead, Ross argues that the facts set forth in the Nevada state court affirmance are incorporated into the habeas petition, and the

claims in his amended petition arose out of those facts.  We now analyze this argument.

### III

Our first step is to determine when, under the applicable federal rules, an attachment to a habeas petition is deemed to be incorporated into that petition.  This issue requires us to interpret the Habeas Rules.

### A

The Habeas Rules "govern a petition for a writ of habeas corpus filed in a United States district court under 28 U.S.C. § 2254" by a state prisoner.  Habeas R. 1(a).  Like the Federal Rules of Evidence and the Civil Rules, the Habeas Rules are promulgated by the Supreme Court pursuant to the Rules Enabling Act, 28 U.S.C. § 2072,[5] *see* H.R. Rep. 94-1471, at 2 & n.2 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 2478, 2479, and therefore are "in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard [a] Rule's mandate than they do to disregard constitutional or statutory provisions." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988).  As with other federal rules, the Advisory Committee notes to the Habeas Rules "provide a reliable source of

---

[5] The Supreme Court initially promulgated the Habeas Rules in 1976 pursuant to authority conferred by 18 U.S.C. §§ 3771–72 (1976) (criminal proceedings) and 28 U.S.C. § 2072 (1976) (civil proceedings).  *See* H.R. Rep. 94-1471 at 2 n.2.  The Rules Enabling Act was subsequently amended by repealing 18 U.S.C. §§ 3771–72 and consolidating the authority to promulgate rules for both civil and criminal proceedings in 28 U.S.C. § 2072.  *See* Judicial Improvements and Access to Justice Act, Pub. L. 100-702, §§ 401–04, 102 Stat. 4642, 4648–4651 (1988).

insight into the meaning of a rule." *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002); *see also Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) ("We pay attention to the Advisory Committee Notes.").

The Habeas Rules incorporate some, but not all, of the Civil Rules. Habeas Rule 12 provides that the Civil Rules "to the extent that they are not inconsistent with any statutory provisions or these [Habeas Rules] may be applied to a proceeding under these rules." *See also* Fed. R. Civ. P. 81(a)(4) (providing that the Civil Rules apply to proceedings for habeas corpus "to the extent that the practice in those proceedings" is not specified in "the Rules Governing Section 2254 Cases," among other rules). In determining whether application of the Civil Rules would be inconsistent with statutes or the Habeas Rules, courts must take into account "the overall framework of habeas corpus." *Mayle*, 545 U.S. at 654 (quoting Habeas R. 12 advisory committee's note).[6] Habeas Rule 12 "permits application of the civil rules only when it would be appropriate to do so." Habeas R. 12 advisory committee's note.

Habeas Rule 2 sets forth the requirements for the form and content of a habeas petition. Habeas Rule 2(c) specifies the content of the petition. Under this rule, the petition must "specify all grounds for relief available to the petitioner," "state the facts supporting each ground," "state the relief requested," and "be signed under penalty of perjury," among

---

[6] Habeas Rule 12 was formerly Habeas Rule 11, but was renumbered in 2009. *See* Habeas R. 12 advisory committee's note to 2009 amendment.

other requirements.**[7]**   Habeas Rule 2(d) provides that the petition must "substantially follow either the form appended" to the Habeas Rules or "a form prescribed by a local district court rule."**[8]**

The Advisory Committee explained the reasons for this requirement.  Before the enactment of Habeas Rule 2, habeas petitions had "frequently contained mere conclusions of law, unsupported by any facts. Since it is the relationship of the facts to the claim asserted that is important, these petitions were obviously deficient." Habeas R. 2 advisory committee's note.   Moreover, "lengthy and often illegible petitions, arranged in no logical order, were submitted to judges who have had to spend hours deciphering them." *Id.*  According to the Advisory Committee, "[t]he requirement of a standard

---

**[7]** Habeas Rule 2(c) provides in full:

The petition must:

(1) specify all the grounds for relief available to the petitioner;

(2) state the facts supporting each ground;

(3) state the relief requested;

(4) be printed, typewritten, or legibly handwritten; and

(5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

**[8]** Habeas Rule 2(d) provides in full: "The petition must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule.   The clerk must make forms available to petitioners without charge."

form benefits the petitioner as well," because the petitioner's "assertions are more readily apparent, and a meritorious claim is more likely to be properly raised and supported." *Id.* The Advisory Committee acknowledged that the factual adequacy of the petition would depend on the petitioner's capabilities and the available legal assistance, but concluded that "[o]n balance . . . the use of forms has contributed enough to warrant mandating their use." *Id.*

In *Mayle*, the Supreme Court reinforced these requirements, explaining that "a complaint need only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests," under the Civil Rules, 545 U.S. at 655 (citation omitted), but "Habeas Corpus Rule 2(c) is more demanding" because it requires the petition to "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground," *id.* (quoting Habeas R. 2(c)). "[N]otice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." *Id.* (internal quotation marks omitted) (quoting Habeas R. 4 advisory committee's note). *Mayle* likewise recognized that "the model form available to aid prisoners in filing their habeas petitions" alerts prisoners to this higher standard. *Id.*

Although Habeas Rule 2(c) has been applied strictly to require habeas petitioners to set forth the factual grounds in the form itself, the Supreme Court has recognized an exception when the habeas petition expressly incorporates attached material by reference. *See Dye v. Hofbauer*, 546 U.S. 1 (2005). In *Dye*, the Supreme Court considered the Sixth Circuit's denial of a habeas petitioner's prosecutorial misconduct claim. *Id.* at 2–3. The Sixth Circuit had denied relief in part on the ground that the petition "presented the

prosecutorial misconduct claim in too vague and general a form." *Id.* at 4.  The Supreme Court held that this reasoning was incorrect because "[t]he habeas corpus petition made clear and repeated references to an appended supporting brief, which presented [petitioner's] federal claim with more than sufficient particularity." *Id.*  In reaching this conclusion, *Dye* cited Civil Rule 10(c), which provides: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).

B

Ross urges us to interpret *Dye* and Civil Rule 10(c) broadly.  According to Ross, because Civil Rule 10(c) states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," a court must deem the facts set out in any document attached to a habeas petition to be included in his habeas petition as a matter of law, regardless whether the petitioner "made clear and repeated references" to the document as supporting the petitioner's legal claim.

We reject this argument, because it is inconsistent with *Mayle*'s direction that we may apply the Civil Rules only to the extent that they are consistent with the Habeas Rules, *see* Habeas R. 12, taking into account the overall habeas framework, *see Mayle*, 545 U.S. at 654.**[9]**  Ross's proposed application of Civil Rule 10(c) would conflict with the

---

**[9]** The parties also dispute whether a court decision is a "written instrument" for purposes of Civil Rule 10(c), but we need not decide that question here.

language and purpose of Habeas Rule 2(c), which requires petitioners to specifically identify "the facts supporting each ground" for relief, in order to alleviate the court's burden of deciphering lengthy or poorly organized petitions. Habeas R. 2 advisory committee's note. If Civil Rule 10(c) applies as broadly as Ross claims, judges would once again be required to wade through "two thousand pages of irrational, prolix, and redundant pleadings," to the detriment of judges and petitioners alike. *Id.* (quoting *Passic v. Michigan*, 98 F. Supp. 1015, 1016 (E.D. Mich. 1951)).

Further, Ross's proposed application of Civil Rule 10(c) would be inconsistent with AEDPA. If each attachment to a habeas petition could serve as a wellspring of facts to support any new claim for relief in a subsequent petition, a petitioner would lay the groundwork for a host of claims that could later relate back merely by following the form's instruction to "[a]ttach to this petition a copy of all state court written decisions regarding this conviction." Moreover, any reasonable petitioner would be motivated to attach reams of documents to each petition in order to preserve a full panoply of possible claims that could be revived after the limitations period has run. Such an application of Civil Rule 10(c) "would permit 'the "relation back" doctrine to swallow AEDPA's statute of limitations.'" *Mayle*, 545 U.S. at 662 (quoting *Felix*, 379 F.3d at 619 (Tallman, J., concurring in part and dissenting in part)). But as the Supreme Court explained, "Congress enacted AEDPA to advance the finality of criminal convictions," and we may not apply the Civil Rules in a way that would give AEDPA's limitations period "slim significance." *Mayle*, 545 U.S. at 662.

The application of Civil Rule 10(c) approved in *Dye* raises none of these concerns. When a petitioner incorporates

by making "clear and repeated references to an appended supporting brief," and the brief presents the petitioner's claims "with more than sufficient particularity," it does not impose a significant additional burden on the courts to identify the petitioner's claims or assess their merit. *Dye*, 546 U.S. at 4. Nor does the targeted incorporation of specific facts in a timely petition give a petitioner an unbounded opportunity to later raise a wide range of other claims under the relation back doctrine. *Cf. Mayle*, 545 U.S. at 661. To the extent the application of Civil Rule 10(c) is limited to this context, where the petitioner expressly and specifically identifies the applicable facts incorporated into the habeas petition, it is consistent with Habeas Rule 2, and therefore not barred by Habeas Rule 12.

## C

We also reject Ross's argument that applying Civil Rule 10(c) in his suggested manner is consistent with Habeas Rule 4, which governs a district court's preliminary review of the petition.[10] Under Habeas Rule 4, "[i]f it plainly appears from

---

[10] Habeas Rule 4 provides in full:

> The clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order. In every case, the

the petition and any attached exhibits that the petitioner is not entitled to relief," then the district court must dismiss the petition.  Otherwise, the district court must order the state to respond.  Habeas R. 4.  Because this language directs the court to examine the facts in the state court order or any other documents attached to the petition, Ross argues, it enables a court to consider whether any facts support the petitioner's legal claims.  We disagree.

Habeas Rule 4 was designed to give courts "an active role in summarily disposing of facially defective habeas petitions." *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).  The rule imposes on courts the duty to screen out frivolous applications, Habeas R. 4 advisory committee's note, when "the allegations in the petition are 'vague [or] conclusory' or 'palpably incredible' or 'patently frivolous or false,'" *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990) (alteration in original) (internal citations omitted), or if there are easily identifiable procedural errors, such as a procedural default, *see Boyd*, 147 F.3d at 1128, failure to exhaust state remedies, *see* Habeas R. 4 advisory committee's note, or untimeliness, that are "obvious on the face of a habeas petition," *Wentzell v. Neven*, 674 F.3d 1124, 1126 (9th Cir. 2012); *Herbst v. Cook*, 260 F.3d 1039, 1042 (9th Cir. 2001) (same).  The rule does not authorize a court to sort through attachments to determine whether facts can be identified to support the petitioner's legal claims.  The latter activity is appropriately reserved for the petitioner; even in an ordinary civil proceeding, we are precluded from

clerk must serve a copy of the petition and any order on the respondent and on the attorney general or other appropriate officer of the state involved.

manufacturing a party's case.  *See Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 n.1 (9th Cir 2008).[11]

D

Finally, Ross argues that we should construe his pro se pleadings liberally.  He also claims his case is particularly worthy of such liberal construction, because the attachment in his case is only six pages in length rather than the thousands of pages of material that concerned the Advisory Committee.  Therefore, he argues, deeming the attached state court opinion to be incorporated in his original petition under Civil Rule 10(c) would not be overly burdensome, and would not be inconsistent with the Habeas Rules.

---

[11] Ross cites several out-of-circuit cases to support this argument, but they are not on point, as they address the question whether documents filed as an exhibit to the state's answer to a habeas petition are part of the answer, and therefore must be served on the petitioner.  In *Rodriguez v. Florida Department of Corrections*, for instance, the court ordered the state to respond to the prisoner's habeas petition pursuant to Habeas Rule 5, and to include a comprehensive appendix of records from prior state proceedings.  748 F.3d 1073, 1074 (11th Cir. 2014).  The state served the prisoner with its answer, but did not include a copy of the appendix even though its answer referred to documents in the appendix.  *Id.*  The Eleventh Circuit concluded that because Rule 10 of the Federal Rules of Civil Procedure made the appendix "part of the pleading," it had to be served on the prisoner along with the answer under Habeas Rule 4.  *Id.* at 1076–77; *see also Sixta v. Thaler*, 615 F.3d 569, 572 (5th Cir. 2010) (same); *Thompson v. Greene*, 427 F.3d 263, 268–69 & n.7 (4th Cir. 2005) (holding that failing to serve the exhibits was inconsistent with the federal rules and the Due Process Clause).  This conclusion is consistent with the Habeas Rules.  By contrast, these out-of-circuit opinions do not address the question whether a court must deem the content of any attached exhibit to be incorporated by reference into a petition, nor whether such content would meet the requirement of Habeas Rule 2(c).

To the extent Ross's arguments are based on his pro se status, they are unavailing. The Habeas Rules and the standard form are designed for use by pro se prisoners, *see* Habeas R. 2 advisory committee's note, and nevertheless impose a "more demanding" pleading standard then had historically been required, *Mayle*, 545 U.S. at 655. Every pro se petitioner must meet the same requirement to "specify all the grounds for relief" and the "facts supporting each ground" in order to make the meritorious claims more readily ascertainable. As with any complaint, a habeas petition must allege sufficient facts to establish the existence of an actionable claim; the absence of such facts cannot be cured by a liberal reading. Even in the civil rights context, where our willingness to "afford the [pro se plaintiff] the benefit of any doubt" is at its zenith, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)), we will not supply elements that are not present in a pro se plaintiff's complaint. In *Byrd v. Maricopa County Sheriff's Department*, for instance, we held that a pro se prisoner's complaint failed to state an equal protection claim, even where a document that "was part of the record before the district court" would have provided a "viable" basis for that claim. 629 F.3d 1135, 1139–40 (9th Cir. 2011) (en banc); *see also Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (holding that a district court could not "augment" a pro se plaintiff's complaint to survive a motion to dismiss by incorporating facts from a closely related case).[12]

---

[12] The dissent attempts to distinguish *Byrd*, *Pena*, and *Ivey* on the ground that they do not involve relation back under Civil Rule 15(c). Dissent at 36. This misses the point. These cases establish the rule that a court cannot augment a pro se petitioner's complaint by including facts borrowed from documents outside the complaint. As a necessary result,

By contrast, a "technical" mistake is one that does not implicate the substance of a petitioner's claim. For example, where a pro se prisoner "had complied with all substantive requirements for filing a federal habeas petition," a district court could not reject the prisoner's petition on the ground he used "white-out and a pen on his cover sheet to write the correct name of the court in which he filed." *Corjasso v. Ayers*, 278 F.3d 874, 878 (9th Cir. 2002). Our holding in *Corjasso* underscores the difference between our willingness to overlook technical mistakes and our unwillingness to supply "essential elements of the claim that were not initially pled," even in the pro se context. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The dissent's reliance on *Corjasso* to show we do not hold a "technical" mistake against pro se petitioners, Dissent at 33, is therefore misplaced.[13]

---

the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," Fed. R. Civ. P. 15(c)(1)(B), does not include facts that cannot be found in the original pleading. An amended complaint cannot relate back to an original pleading that is missing the relevant facts.

[13] The dissent cites cases where we have recharacterized the nature of a petitioner's filing in a manner that favors the petitioner, Dissent at 31–32 (citing *Woods v. Carey*, 525 F.3d 886, 888, 890 (9th Cir. 2008) (recharacterizing a "second" habeas petition as a motion to amend rather than a successive petition); *United States v. Seesing*, 234 F.3d 456, 464 (9th Cir. 2000) (noting the practice of recharacterizing pro se filings as § 2255 habeas petitions under certain circumstances)). Those cases are inapplicable here. While a court may "ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category," *Castro v. United States*, 540 U.S. 375, 381 (2003) (collecting cases), a court may not manufacture the substance of a petitioner's claim.

E

The dissent focuses on the slightly different argument that facts contained in the state court order attached to Ross's original petition constitute "occurrence[s]" that were "attempted to be set out" in the petition itself, Fed. R. Civ. P. 15(c)(1)(B); Dissent at 32, 36, 41, and therefore provide a basis for relation back of the new petition.

We disagree with the dissent's reading of "attempted to be set out" in this context. As noted above, because a court cannot augment a pro se petitioner's complaint by including facts borrowed from documents outside the complaint (except when they are expressly incorporated by reference in the complaint), we may not deem such facts to be set out or "attempted to be set out" in that pleading. *See supra* p. 21. The dissent's contrary reading of Civil Rule 15 runs afoul of *Mayle*'s warning not to adopt an overly "capacious" construction of the rule, 545 U.S. at 657, and not to view its requirements "at too high a level of generality," *id.* at 661 (citation omitted), in a manner that would defeat the purposes of Habeas Rule 2(c) and AEDPA.[14] Rather, as *Mayle* explains, the scope of Civil Rule 15(c) must be read in light of Habeas Rule 2(c), which "instructs petitioners to 'specify all [available] grounds for relief' and to 'state the facts supporting each ground.'" *Id.* (alteration in original) (quoting

---

[14] The dissent cites to a pre-*Mayle* case, *Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000), Dissent at 32, for the general proposition that we freely allow relation back in the habeas context, but that case is inapposite. In that case, there was no dispute that the habeas petitioner had set forth his claims in sufficient detail in the original petition, and we applied Civil Rule 15(c) only to revive these claims after the court mistakenly dismissed the original petition due to a procedural error. *Anthony*, 236 F.3d at 575–77.

Habeas R. 2(c)). Merely attaching a state court order to a habeas petition, as required by the petition form, does not qualify as an attempt to meet such requirements.[15] *Cf. Dye*, 546 U.S. at 4.

Moreover, the dissent's construction would raise the concerns cited in *Mayle* that the relation back doctrine will "swallow AEDPA's statute of limitations." *Mayle*, 545 U.S. at 662 (quoting *Felix*, 379 F.3d at 619 (Tallman, J., concurring in part and dissenting in part)). As explained above, attaching the state court opinion is precisely what the form petition already requires petitioners to do. Because it summarizes the relevant pretrial, trial, and post-trial conduct, a state court opinion would allow "[a] miscellany of claims for relief [to] be raised later rather than sooner and relate back," so long as they have some relation to the opinion's description of those events. *Id.* at 661. Regardless whether this is labeled as incorporation by reference under Civil Rule 10(c), as Ross suggests, or an attempt to set out facts under Civil Rule 15(c), per the dissent, this rule would effectively

---

[15] The dissent argues that because the facts in the state court order attached to Ross's original petition "match the claims raised summarily in the petition," we should deem the attachment to constitute an attempt to set out the facts supporting Ross's claims for purposes of Civil Rule 15(c). Dissent at 34. But there is no such one-to-one matching between the two documents. At least half the claims in Ross's original petition do not line up with the state court opinion. The state court makes no mention of a claim based on counsel having "[f]ailed to prepare for jury selection." Nor does the state court opinion clearly provide the factual bases for Ross's claims that counsel "[f]ailed to review evidence and adequately prepare," "[f]ailed to argue the prejudice of evidence lost prior to trial," and "[f]ailed to prepare for trial." Given the inconsistency between Ross's petition and the state court order and the lack of any clarifying incorporation by reference, a district court could not glean that Ross was attempting to set forth the bases of his claims.

toll the statute of limitations for all such claims for all petitioners using the form petition. Because we may not construe Civil Rule 15(c) in an overly "capacious" manner that would defeat Habeas Rule 2 and AEDPA, *Mayle*, 545 U.S. at 657, we reject these arguments. For the same reasons, we reject Ross's and the dissent's argument that we should make an exception to the strictures of Civil Rule 15(c) in his case due to the fact that the state court opinion was only six pages long.[16]

F

Finally, the dissent argues that we should make an exception to Civil Rule 15(c) in Ross's case due to his pro se status at the time of his original petition. The dissent pays lip service to the concerns raised in *Mayle* regarding clarity and finality but brushes them aside, concluding that they are not "sufficient to justify withholding the benefit of liberal construction from a pro se petitioner." Dissent at 39. But this is contrary to *Mayle*'s clear instructions that we must take such concerns seriously when applying relation back in the habeas context. 545 U.S. at 662. In fact, *Mayle* expressly

---

[16] Even if a limited exception for state court orders, as opposed to trial transcripts and other documents, were consistent with the Habeas Rules, any such "limiting" rule is not tethered to anything in the Habeas Rules or the habeas framework itself, and so it is doubtful that it would stay limiting for long. District judges will ultimately be required to undertake the substantial burden of making case-by-case determinations in response to petitioners' arguments that various attachments provide a sufficient basis for relation back, contrary to the reasons for mandating the use of standard forms. The dissent's suggestion that at least *short* state court opinions should be deemed to constitute an attempt to set out the relevant "conduct, transaction, or occurrence" in the original petition, Dissent at 32 n.1, fails for the same reason.

rejected the argument that a more liberal relation back scheme was necessary to protect the interests of pro se prisoners. *See id.* at 664 n.8; *id.* at 675–76 (Souter, J., dissenting).

The dissent attempts to distinguish *Mayle* on several grounds, but none of them is persuasive. First, the dissent concedes that *Mayle* declined to differentiate between pro se petitioners and those represented by counsel in applying Civil Rule 15(c) to the habeas context, but makes a flimsy attempt to distinguish *Mayle* on the ground that the pro se petitioner's counsel in *Mayle* was appointed before the statute of limitations had expired. Dissent at 40 n.4. This argument is meritless. While *Mayle* noted the timing of the counsel's appointment, that fact did not influence *Mayle*'s interpretation of the relation back doctrine. *See* 545 U.S. at 664 n.8 (explaining that the filing of a habeas petition does not fall within the category of cases that "require appointment of counsel for an indigent litigant at a critical stage to ensure his meaningful access to justice").

Second, the dissent argues that *Mayle* is distinguishable because "many of Ross's claims *were* raised in his original petition—he simply failed to substantiate them with sufficient facts." Dissent at 38–39. This ignores *Mayle*'s central holding. *Mayle* did not focus on whether the petitioner's original and amended petitions raised the same claims, but rather held that the new Fifth Amendment claim in the amended petition did not relate back to the original petition, because the original petition did not contain "separate congeries of facts supporting th[at] ground[] for relief." 545 U.S. at 661. Thus under *Mayle*, the relation-back question here is whether Ross's original petition incorporated the facts set out in the attached state court order, not whether Ross

sought to raise new claims in his subsequent amended petition. And contrary to the dissent, *Mayle*'s insistence on avoiding an interpretation of Rule 15(c) that would allow a petitioner to raise a "miscellany of claims for relief" in subsequent petitions without regard to AEDPA's statute of limitations carries equal force here. *Id.* at 661–62. As the dissent concedes, Ross's amended petition seeks to raise multiple new claims not presented in the original petition.[17] Certainly, Ross's case is not distinguishable from *Mayle* on this basis.

The dissent's other arguments for ignoring the concerns set forth in *Mayle* are similarly meritless. The dissent notes that Ross "indisputably filed his original petition within the applicable one-year limitations period." Dissent at 39. This is immaterial, however, as the same could be said in every relation back case where a plaintiff files an inadequate original petition and seeks to have a subsequent amended petition relate back. Finally, the dissent contends that because Civil Rule 15(a)(2) allows a court to deny a petitioner leave to file an amended petition, it provides an adequate safeguard against abuse. Dissent at 39. But *Mayle* squarely rejected this argument. 545 U.S. at 663 ("[W]e do

---

[17] Ross raised only ineffective assistance of counsel claims in his original petition. In his amended petition, Ross asserted direct violations of his Confrontation Clause and Speedy Trial rights, and brought a sufficiency-of-the-evidence challenge. Ross's amended petition also alleged that counsel was ineffective for failing to raise mitigating arguments at sentencing, a claim that is likewise absent from his original petition. Moreover, the amended petition sought to revive multiple ineffective assistance claims that were addressed in the state court order but not raised in the original petition, such as inadequate communication, failure to object based on the best evidence rule, and failure to object based on witness unavailability.

not regard Rule 15(a) as a firm check against petition amendments that present new claims dependent upon discrete facts after AEDPA's limitation period has run.").

We therefore reject Ross and the dissent's arguments based on Ross's pro se status at the time of his original petition. This is not to say that pro se habeas petitioners may not benefit from our practice of liberal construction. Consistent with the pleading scheme, a court may liberally construe the legal claims and facts set forth in the petitioner's habeas form, pursuant to Habeas Rule 2(c), as making out a plausible claim for relief. But giving a generous reading to the claims a petitioner has actually made is a far cry from requiring a court to piece together the claims themselves. Whether under the guise of Civil Rule 10(c) or 15(c), even "a liberal interpretation . . . may not supply essential elements of the claim that were not initially pled." *Ivey*, 673 F.2d at 268; *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based.").

IV

Applying these legal principles here, we conclude that the Nevada state court affirmance is not incorporated by reference in Ross's original petition. There is no dispute that Ross did not comply with Habeas Rule 2(c) or the language in the standard form prescribed by the Nevada district court, which required him to "summarize briefly" the necessary facts in the space provided for each ground and to "attach up to two extra pages stating additional grounds and/or supporting facts." Unlike the petitioner in *Dye*, Ross did not incorporate the facts supporting his legal allegations by

making "clear and repeated references" to the document as supporting his legal claims.  546 U.S. at 4.  Indeed, Ross made no attempt to do so.  His federal habeas petition makes no reference to the state court order or indicates that it sets forth the facts supporting his claimed grounds for relief.[18] Rather, his reference to the state court affirmance in his affidavit makes it clear he intended to use it for a different purpose, namely to support his affidavit's explanation of the timing of when he learned of the state court's ruling.  This was no mistake; Ross knew how to incorporate by reference, because he had filled out a similar form for his state PCR petition, attached a 22-page handwritten memorandum that set forth the factual background for each claim and identified the facts that were relevant to each claim, and explicitly incorporated those facts with respect to each claim in his state PCR petition by writing "please see supporting memorandum. . ." in the space provided for supporting facts for each claim.

Because Ross did not comply with Habeas Rule 2(c) either directly or by incorporating (or attempting to incorporate) the facts in the Nevada Supreme Court affirmance into his original petition, that petition does not provide an aggregation of facts that can support the claims in his amended petition.  Accordingly, the district court did not

---

[18] We reject Ross's argument that, by checking the space on the form petition indicating that he had raised Ground 1 to the Nevada Supreme Court, he also explicitly incorporated the Nevada Supreme Court's order deciding that ground.  This falls far short of the "clear" reference that *Dye* requires.  546 U.S. at 4.

err in concluding that Ross's amended petition cannot relate back to the claims in his original petition because they contain no facts.

**AFFIRMED.**

BATES, Senior District Judge, dissenting:

Proceeding *pro se*, Ronald Ross filed a federal habeas petition a few months before his time to do so under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was set to expire. His form petition asserted ineffective assistance of trial counsel on several grounds, including failure to secure a speedy trial, to assert prejudice from evidence lost before trial, to retain defense experts, and to object to the state's experts. Ross's petition contained no specific factual allegations, but he attached to his petition a six-page state-court decision that discussed the factual bases of most of his claims in some detail. The majority holds that Ross's amended petition—which he prepared with the assistance of counsel but filed several months after AEDPA's deadline had passed—does not relate back to the date of his original petition because the original petition set out no facts. *See* Fed. R. Civ. P. 15(c)(1)(B) (providing that an amendment relates back if it asserts claims that arise out of the "conduct, transaction, or occurrence" set out in the original pleading).

Under the familiar rule that *pro se* pleadings are to be liberally construed, however, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), we should read Ross's original petition as setting out the facts discussed in the attached state-court decision. Then, we should remand for

the district court to determine in the first instance whether the claims in Ross's amended petition arose out of the conduct, transaction, or occurrence set out in his original petition.

# I

Federal Rule of Civil Procedure 15(c)(1)(B) permits an amendment to a pleading to relate back to the date of the original pleading where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The Supreme Court has recognized that Rule 15(c) applies in habeas proceedings, *see Mayle v. Felix*, 545 U.S. 644, 655 (2005), and there is no dispute that if the claims in Ross's amended habeas petition arose out of the "congeries of facts" set out in his original petition, *id.* at 661, the amendment would be timely. According to the majority, however, Ross's original petition set out "no facts at all," Majority Op. at 11, and so there was nothing for the claims in Ross's amended petition to relate back to.

But this reading of Ross's original petition is unduly narrow in light of his *pro se* status. The Supreme Court has repeatedly told us that *pro se* filings are to be liberally construed. *See Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). This rule applies with equal force in the habeas context, where it requires courts not only to draw reasonable factual inferences in the petitioner's favor, *see Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010), but also to construe the *filing itself* in a manner that favors the petitioner, *see, e.g.*, *Woods v. Carey*, 525 F.3d 886, 890 (9th Cir. 2008) (construing a *pro se* filing styled as a "second" habeas petition as a motion to amend a pending petition, thereby avoiding AEDPA's exacting standards for

second and successive petitions); *United States v. Seesing*, 234 F.3d 456, 463–64 (9th Cir. 2000) (reversing the district court's decision to construe a *pro se* prisoner's letter as a habeas petition because doing so "seriously diminished the possibility of successfully filing a future, properly drafted and documented, motion").

Here, the facts underlying the claims in Ross's original petition were set out (for the most part) in a reasoned decision of the Nevada Supreme Court, which was attached as an exhibit to Ross's petition. In light of Ross's *pro se* status, his original petition should have been liberally construed as at least "*attempt[ing]* to . . . set out" those facts. Fed. R. Civ. P. 15(c)(1)(B) (emphasis added); *see Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000) (allowing relation back in the habeas context where "the central policy of Rule 15(c)—ensuring that the non-moving party has sufficient notice of the facts and claims giving rise to the proposed amendment—[was] satisfied"). To the extent that his amended petition asserted claims arising out of those facts, therefore, it should have been allowed to relate back.

True, the form petition that Ross filled out instructed him to "[s]ummarize briefly the facts supporting each ground" for relief, and Ross failed to heed this instruction. But as counsel for the state admitted at oral argument, had Ross's petition simply pointed to the facts discussed in the Nevada Supreme Court's order, those facts would have been incorporated into the petition by reference and hence could have supported relation back.[1]  *See* Fed. R. Civ. P. 10(c); *Dye v. Hofbauer*,

---

[1] When asked what Ross would have had to do to incorporate these facts into his petition, counsel replied that "he could have said, 'see page 3 of that decision, here's the facts that I want to incorporate as my

546 U.S. 1, 4 (2005). Perhaps we should not excuse a counseled petitioner for such a mistake, and perhaps even a *pro se* petitioner could not prevail if the attachment were a trial transcript or some other, denser document. But here, where the factual bases of Ross's claims were plain on the face of the attachment to his *pro se* petition, Ross's failure explicitly to incorporate those facts into his form petition was precisely the kind of "technical" mistake that we have repeatedly refused to hold against *pro se* petitioners. *Corjasso v. Ayers*, 278 F.3d 874, 878 (9th Cir. 2002).

The majority protests that this application of the rule of liberal construction for *pro se* pleadings lacks a limiting principle. Respectfully, I disagree. Where, as here, a state-court decision denying postconviction relief is attached as an exhibit to a *pro se* habeas petition and the petition lists claims that correspond to the claims addressed in that decision, principles of liberal construction require that the facts discussed in the decision be construed as "set out" in the petition for purposes of relation back under Rule 15(c).

This narrow rule makes sense. State-court decisions denying postconviction review usually distill the factual

---

supporting facts.'" *See* U.S. Court of Appeals for the Ninth Circuit, *16-16533 Ronald Ross v. Williams*, YouTube, 12:05–12:12 (Dec. 5, 2017), https://www.youtube.com/watch?v=bryJdYNcodY. In other words, the state contends that for incorporation to be effective, a petitioner must identify the specific facts that the petitioner believes support his claims. But the state-court decision attached to Ross's petition is only six pages long, four of which set out the factual basis for (and then reject) each of his eight claims. If a simple "see pages 2 through 5" would not have been enough to incorporate the facts stated on those pages, what more would Ross have had to write? The state's attempt to frame incorporation by reference as a demanding task is unpersuasive.

background of a petitioner's claims into an easily digestible summary. *See* Rule 5 of the Rules Governing Section 2254 Cases in the U.S. District Courts (the "Habeas Rules") advisory committee's note to 2004 amendment (recognizing that such decisions "may assist [the federal habeas court] in resolving the issues raised . . . in the petition"). Moreover, because AEDPA's exhaustion requirement bars a petitioner from asserting claims in a federal habeas petition that were not raised in state proceedings, *see* 28 U.S.C. § 2254(b)–(c), the state-court decision will in most cases neatly summarize the facts underlying those claims—and *only* those claims—that the district court can consider on habeas review. And where the claims addressed in an attached state-court decision match the claims raised summarily in the petition, the *pro se* petitioner can fairly be said to have "attempted" to set out those facts in his petition. Fed. R. Civ. P. 15(c)(1)(B).

The limitations of this approach are firmly grounded in the framework of habeas litigation. Unlike the state-court decision denying postconviction review, documents like trial transcripts or other parts of the state-court record are less likely to summarize concisely the facts underlying the petitioner's claims. And other decisions from earlier in the petitioner's state-court proceedings are less likely to summarize the facts underlying precisely those claims that the petitioner is entitled to assert on federal habeas review in light of AEDPA's exhaustion requirement.

The majority's concern that a narrow ruling in Ross's favor would not "stay limiting for long" is unwarranted. Majority Op. at 25 n.16. District courts know that liberal construction does not require them "to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see Barnett v. Duffey*, 621 Fed. App'x 496,

496–97 (9th Cir. 2015) (unpublished) (affirming the district court's refusal to consider a claim that was "'buried,' by [the petitioner's] own description, amid hundreds of pages of evidentiary exhibits appended to his petition"). They are well versed in the practice of parsing *pro se* pleadings, and faithfully applying the rule of liberal construction here would by no means leave them at sea.

## II

Like Ross's briefing, the majority's analysis focuses primarily on a different issue: whether Federal Rule of Civil Procedure 10(c), which provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," should be applied here under Habeas Rule 12, which states that "[t]he Federal Rules of Civil Procedure . . . may be applied to a [habeas] proceeding," but only "to the extent that they are not inconsistent with any statutory provisions or these rules." The majority concludes that Civil Rule 10(c) does not apply because Ross's original petition did not "expressly incorporate[]" the attached state-court decision. Majority Op. at 15. This is so, the majority explains, because applying Rule 10(c) in such a case would conflict with Habeas Rule 2, which states that a petition "must . . . state the facts supporting each ground [for relief]." *See id.* at 12–18.

I express no opinion on the majority's analysis of the interplay between Habeas Rule 2, Habeas Rule 12, and Civil Rule 10(c), because I do not think it is necessary to resolve this case. But the majority also rejects the narrow course here—liberally construing Ross's *pro se* habeas petition as attempting to set out, for purposes of relation back, the facts discussed in the attached state-court decision that denied him

postconviction relief—as inconsistent with Habeas Rule 2. *See id.* at 20–28. In my view, this is error.

To begin with, it is important to recognize what is *not* at stake. The question here is not whether the district court should have considered the facts discussed in the attached state-court decision to evaluate the factual sufficiency of Ross's original petition under Habeas Rule 2. Indeed, there is no dispute that Ross's *amended* petition clearly states the factual basis for each of the claims it asserts. The question, rather, is whether the district court should have considered the facts discussed in the attached state-court decision as "set out"—or at least "attempted to be set out"—in his original petition for purposes of relation back under Civil Rule 15(c).

In concluding that allowing relation back here would conflict with Habeas Rule 2, the majority conflates these two inquiries. For example, the majority relies on three cases in which this Court refused to apply liberal-construction principles to "supply 'essential elements of [a] claim that were not initially pled'" in a *pro se* plaintiff's civil complaint. Majority Op. at 22(quoting *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)); *see id.* at 21 (quoting *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1139–40 (9th Cir. 2011), and citing *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)). In *Byrd* and *Pena*, however, the plaintiffs sought to rely on facts outside of their complaints to survive a motion to dismiss under Civil Rule 12(b)(6). And *Ivey* simply affirmed the dismissal of a complaint having no specific factual allegations that defendants engaged in the misconduct alleged. None of these cases involved relation back under Civil Rule 15(c).

This distinction matters because Civil Rule 15(c) requires less for relation back than Habeas Rule 2 requires to survive dismissal. Civil Rule 15(c) is satisfied if the original petition "set[s] out"—or even "attempt[s]" to set out—the factual basis for the amendment's claims. Habeas Rule 2, by contrast, requires that the petition's claims be pleaded with "particularity," a standard that the Supreme Court has called "demanding." *Mayle*, 545 U.S. at 655. This differential makes sense, because the two doctrines serve different purposes. Habeas Rule 2's pleading standard seeks to discourage "lengthy and often illegible petitions" that require "hours [to] decipher[]," as well as petitions "contain[ing] mere conclusions of law, unsupported by any facts." *See* Habeas Rule 2 advisory committee's note. But relation back simply ensures that the respondent has fair notice of what the petitioner might later assert in an amendment to his petition. *See Anthony*, 236 F.3d at 576.

The majority's real argument, then, is that permitting relation back here would conflict with the policy considerations that Habeas Rule 2 was intended to advance. *See* Majority Op. at 16–17, 23–25. But while those policy concerns might control in the mine run of cases, they carry less force here. As one might expect of a decision from a state's highest court, the Nevada Supreme Court's order was neither "lengthy" nor "illegible." On the contrary, it stated the facts underlying Ross's claims clearly, concisely, and in a manner that highlighted their legal significance. *See* Habeas Rule 2 advisory committee's note ("[I]t is the relationship of the facts to the claim asserted that is important . . . ."). And since this will likely be true of most reasoned

state-court opinions denying postconviction relief,[2] relation back here implicates none of the efficiency concerns that animate Habeas Rule 2.

Indeed, the only sense in which the narrow approach that I have proposed could conceivably conflict with the policies underlying the Habeas Rules is that, in some cases, it would allow Habeas Rule 2's pleading requirement to be met by an amended petition filed after the running of AEDPA's one-year statute of limitations. The majority asserts such a result would run afoul of *Mayle*, where the Supreme Court rejected a reading of the phrase "conduct, transaction, or occurrence" in Civil Rule 15(c) that would have encompassed the petitioner's entire trial and conviction in state court. *See* 545 U.S. at 662 ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance.").

But Ross's case is distinguishable from *Mayle* in two important respects. First, unlike the petitioner in *Mayle*, whose proposed application of Civil Rule 15(c) would have allowed his claims to be "raised later rather than sooner and relate back," *id.* at 661, many of Ross's claims *were* raised in his original petition—he simply failed to substantiate them

---

[2] Under the approach I think we should take, federal habeas courts might have to consider the facts set out in lengthier state-court decisions. But surely even these decisions will not be "illegible," and length alone is no reason to ignore such a decision when it is included as an attachment to a *pro se* habeas petition. Time is a valuable resource in state courts as well, and there is no reason to believe that a state court will recite more facts than are necessary to resolve whatever claims the petitioner raised below.

with sufficient facts.[3]  Second, the set of Ross's claims that, in my view, should be allowed to relate back is far narrower than the set of claims at issue in *Mayle*: a habeas petitioner should be allowed to amend his petition only to clarify claims whose factual bases were clearly addressed in an attached state-court decision denying him postconviction relief.  Such a limited rule would hardly "swallow AEDPA's statute of limitation."  *Mayle*, 545 U.S. at 662 (citation omitted).

Nor are the finality concerns cited by the majority sufficient to justify withholding the benefit of liberal construction from a *pro se* petitioner.  Ross by no means seeks a complete reprieve from AEDPA's filing deadline, since he indisputably filed his original petition within the applicable one-year limitations period.  In many cases, moreover, a district court will have the power to deny leave to file an amendment if it finds that the petitioner delayed unjustifiably in preparing that amendment.  *See* Fed. R. Civ. P. 15(a)(2).  Finally, the fact remains that when Ross filed his original petition, he was proceeding *pro se*.  The majority is

---

[3] The majority disputes this, asserting that Ross's original petition "raised only ineffective assistance of counsel claims."  Majority Op. at 27 n.17.  But the majority again reads Ross's petition too narrowly.  The petition alleged that "counsel was ineffective for failing to" do a number of things—including to "[s]ecure a speedy trial."  Liberally construed, this allegation states a freestanding speedy trial claim.  Moreover, even if Ross's original petition were properly read as asserting only ineffective assistance of counsel claims, such claims make up the bulk of Ross's amended petition.  Finally, although some of the claims in the amended petition do not seem to appear in the original (even with the state-court order attached), the match between the two petitions was not fully addressed in the parties' briefs—indeed, the state did not address the issue at all.  Thus, we should have done as the state suggested and remanded this case to the district court to perform the relation-back analysis in the first instance.

undoubtedly correct that AEDPA's one-year deadline was meant to "advance the finality of criminal convictions." Majority Op. at 17 (quoting *Mayle*, 545 U.S. at 662). But this finality interest should not be advanced on the basis of fairly trivial mistakes made by prisoners who proceed without the advice of an attorney.[4]

\*   \*   \*

When applying a Federal Rule of Civil Procedure in a habeas case, courts must construe the rule in light of the basic policies that underlie the habeas framework. *See Mayle*, 545 U.S. at 661–663 (interpreting the term "conduct, transaction, or occurrence" in Civil Rule 15(c) in light of the policy concerns underlying Habeas Rule 2); *see also* Habeas Rule 12. But when the application of that rule involves a *pro se* filing, courts must also heed traditional principles of liberal construction. *See Porter*, 620 F.3d at 958. In the narrow circumstances presented by this case, the efficiency and finality concerns advanced by Habeas Rule 2 carry diminished force, while the fairness concerns underpinning

---

[4] According to the majority, "*Mayle* expressly rejected the argument that a more liberal relation back scheme was necessary to protect the interests of pro se prisoners." *See* Majority Op. at 25–26. True, the Court in *Mayle* rejected the petitioner's broad reading of Civil Rule 15(c) despite the dissent's observation that "in the overwhelming majority of cases, the original petition is the work of a *pro se* petitioner." 545 U.S. at 675 (Souter, J., dissenting). But the rule proposed by the petitioner in *Mayle* was far broader than the one advocated here. Moreover, the *Mayle* Court described the dissent's concerns as "understandable" and noted that "in [this] case, counsel was appointed, and had some two and a half months to amend the petition before AEDPA's limitation period expired." *Id.* at 664 n. 8. Here, Ross's counsel was appointed *after* his AEDPA deadline had run. By the *Mayle* Court's own estimation, then, Ross's *pro se* status should carry greater weight here.

the rule of liberal construction are directly implicated. Thus, Ross's original *pro se* petition should have been liberally construed as setting out—or at least attempting to set out—the facts stated in the attached state-court decision for purposes of Civil Rule 15(c), and the claims in his amended petition should have been allowed to relate back to the date of his original petition to the extent that they arose out of those facts.

I respectfully dissent.